(No. 24380.—
THE PEOPLE *ex rel.* Sadie Douglas, Appellant, *vs.* EDWARD J. BARRETT, Auditor of Public Accounts, *et al.* Appellees.

*Opinion filed February 15, 1939.*

STONE, J., specially concurring.

SHAW, C. J., and WILSON, J., dissenting.

HARRIS B. GAINES, for appellant.

OTTO KERNER, Attorney General, (MONTGOMERY S. WINNING, WILLIAM C. CLAUSEN, and EARL B. DICKERSON, of counsel,) for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Warren B. Douglas had served from 1917 to 1928 as a representative in the Illinois General Assembly. At the general election held on November 6, 1934, he was again elected a representative in the Fifty-ninth General Assembly. He died December 3, 1934, before the legislature convened on January 9, 1935. On April 23, 1935, the General Assembly, by House Bill 13 (Laws of 1935, p. 157) appropriated $3500 to his widow, Sadie Douglas, the appellant. The Auditor of Public Accounts refused to draw a warrant in her favor, whereupon she filed her *mandamus*

petition in the superior court of Cook county to compel him and the State Treasurer to pay her the $3500. After a hearing on her amended petition and defendant's answer the court denied the writ. Relatrix has appealed to this court because the constitutionality of the act is involved.

Appellees contend that the election of Douglas did not, alone, entitle him to receive the salary of the office, and that, therefore, the appropriation was for a private purpose in contravention of section 20 of article 4 of the constitution of 1870. They also rely on sections 5, 9 and 21 of article 4 of that constitution, and section 1 of, "An act to provide for and fix the compensation of the members of the General Assembly of the State of Illinois." (Ill. Rev. Stat. 1937, chap. 63, par. 14.) Section 5 of article 4 provides that members of the General Assembly shall take an oath before entering upon their official duties; section 9 of article 4 fixes the time when the sessions shall convene and makes each house the judge of the election, returns and qualifications of its members; section 21 of article 4 specifies that members of the General Assembly shall receive only such compensation as shall be prescribed by law, with the exception of $50 per session for incidental expenses. At the time Douglas was elected the statute (Smith-Hurd Stat. 1935, chap. 63, par. 14) provided that representatives should receive $3500 for their two-year term of office, payable during the first regular session after their election.

Section 20 of article 4 of the constitution which appellees contend invalidates the appropriation in question provides: "The State shall never pay, assume or become responsible for the debts or liabilities of, or in any manner give, loan or extend its credit to or in aid of any public or other corporation, association or individual." This provision limits the legislature to appropriations for public purposes (*Chicago Motor Club* v. *Kinney,* 329 Ill. 120) but the question of what is a public purpose is primarily for the legislature to determine. Judicial interference with the

legislature is not warranted, unless there has been a clear abuse of power. (*Robbins* v. *Kadyk,* 312 Ill. 290.) As was said by the Supreme Court of the United States in *Missouri, Kansas and Texas Railroad Co.* v. *May,* 194 U. S. 267: "Great constitutional provisions must be administered with caution. * * * It must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts." Whether an appropriation is for a public purpose depends on the particular facts in each case.

The act in this case provides, in substance that: Whereas Warren B. Douglas died after his election as a member of the Fifty-ninth General Assembly, and, whereas, the State would have paid him the sum of $3500 had he survived, and, whereas, he "left surviving him a widow, to whom it seems just and fitting that the State pay the salary to which the deceased would have been entitled had he survived," which sum would have been applied to the support and maintenance of his wife; therefore, there is appropriated the sum of $3500 to Sadie Douglas, the widow of Warren B. Douglas. This language indicates that the legislature made the appropriation to satisfy what it recognized as a strong moral or equitable obligation to appellant.

Appropriations made to discharge such an obligation are for public purposes and are within the power of the legislature. (*Hagler* v. *Small,* 307 Ill. 460; *Wyoming* v. *Carter* 215 Pac. 477; *Opinion of Justices,* 240 Mass. 616; see, also, *People* v. *Westchester Nat. Bank,* 231 N. Y. 465.) A moral or equitable claim against the State may arise out of many varying circumstances. Thus, public money may be lawfully appropriated to pay for injury to land by a public improvement, although no liability existed when the injury occurred (*In re Borup,* 182 N. Y. 222) or to pay a bounty which had been earned but not paid when the statute authorizing the payment of the bounty was repealed (*United States* v. *Realty Co.* 163 U. S. 427) or to grant bonuses to

soldiers. (*Hagler* v. *Small, supra.*) In the last named case, at page 478, we quoted from *United States* v. *Realty Co. supra,* as follows: "The power to provide for claims upon the State founded in equity and justice has also been recognized as existing in the State governments. For example, in *Gilford* v. *Chenango County Supervisors,* 13 N. Y. 143, it was held by the New York Court of Appeals that the legislature was not confined in its appropriation of public moneys to sums to be raised by taxation in favor of individuals in cases in which the legal demands existed against the State, but that it could recognize claims founded in equity and justice in the largest sense of these terms, or in gratitude, or in charity. Of course, the difference between the power of the State legislatures and that of the Congress of the United States is not lost sight of, but in relation to the power to recognize and to pay obligations resting upon moral consideration or upon the general principles of right and justice the Federal Congress stands on the same level with the State legislature." We further said, at page 479: "It is of the essence of a moral obligation that it arise out of a state of facts appealing to a universal sense of justice and fairness though upon such facts no legal claim can be based. The State may be said to owe a moral debt to an individual when his claim grows out of the principles of right and justice. When it is of such a nature as to be binding on the conscience or honor of an individual it may be said to be based upon considerations of a moral or honorary nature of which the State may take cognizance. Payments to individuals in the nature of a gratuity yet having some features of a moral obligation to support them have been made by Congress since the foundation of the government." See, also, *Woodall* v. *Darst,* 77 S. E. (W. Va.) 265, 44 L. R. A. (N. S.) 83, 87; *Munro* v. *State,* 223 N. Y. 208, 25 R. C. L. 402.

The people of this State, by not challenging the long line of statutes similar to the one here considered, have

signified their approval of such enactments. (Appropriations to widow of Governor, Laws of 1903, p. 24; to widow or estate of Supreme Court Justices, Laws of 1901, p. 41; Laws of 1907, p. 49; Laws of 1915, p. 198; to widow or estate of circuit judges, Laws of 1911, p. 85; Laws of 1913, p. 84; Laws of 1917, p. 128; Laws of 1923, p. 54; Laws of 1931, p. 151; Laws of 1931, p. 143; Laws of 1933, p. 156; to widow or estate of deceased legislator, Laws of 1889, p. 53; Laws of 1897, p. 30; Laws of 1909, p. 74; Laws of 1917, p. 128; Laws of 1921, p. 9; Laws of 1927, p. 181; Laws of 1927, p. 71.) While this established custom is not conclusive of the constitutionality of the enactments, nevertheless, in determining the validity of legislative action, the uniform, continued and contemporaneous construction of the constitution given by the legislature over a long period of years and generally recognized by the public, is usually given great weight by the courts. *Furlong* v. *South Park Comrs.* 340 Ill. 363; *People* v. *Kelly,* 347 id. 221; *Cohens* v. *Virginia,* 6 Wheat. 264; *Myers* v. *United States,* 272 U. S. 52.

Under the facts here presented could the legislature rightfully determine that an equitable or moral claim existed against the State? Douglas, at the time of his death, had been duly elected and held title to the office of member of the Fifty-ninth General Assembly. Section 2 of article 4 of our constitution provides that members of the General Assembly shall be elected on the Tuesday after the first Monday in November, in 1870, and every two years thereafter. Section 5 of that article requires that members of the General Assembly shall take and subscribe an oath of office "before they enter upon their official duties." That section further provides that "any member who shall refuse to take the oath herein prescribed, shall forfeit his office." To forfeit means to lose, or to lose the right to. As a person cannot lose that which he does not have, it follows from the above language that one elected to the office of member

of the General Assembly has, upon such election, title to that office. Such was our holding under similar constitutional provisions governing the election and title to the office of circuit and superior court judges. *People* v. *Sweitzer,* 280 Ill. 436.

Section 9 of article 4 of the constitution provides that each house of the General Assembly shall be "the judge of the election, returns and qualifications of its members." No contest of Douglas' election was filed with that body. The act before us is, in substance, a declaration that Douglas was duly elected to the office of member of the Fifty-ninth General Assembly. Since members of the General Assembly are paid their entire salary soon after they take the oath of office, Douglas would have received his salary had he lived but a few days longer. The salary is an incident to title to the office and is not based alone on the amount of services rendered. Where, as here, the only factor preventing the claim from being perfectly valid, is death a few days before taking the oath, we cannot say that the legislature was not justified in recognizing the widow's moral or equitable claim to Douglas' salary. It is immaterial that the appropriation was made to the widow and not the estate, since the claim is equitable in nature. The legislature might recognize that the widow, in all probability, would have been the principal beneficiary of the salary. This appropriation is similar to those granting pensions to public officers, the constitutionality of which has been uniformly upheld. *People* v. *Retirement Board,* 326 Ill. 579; *United States* v. *Hall,* 98 U. S. 343.

Appellees finally contend that the appropriation to Mrs. Douglas violated section 19 of article 4 of the constitution of 1870, even if it be considered as having been made in recognition of the previous services rendered by her husband. That section provides that the General Assembly shall never grant or authorize extra compensation to any public officer, agent, servant or contractor, after service has

been rendered or contract has been made, nor authorize the payment of any claim, or part thereof, created against the State under any agreement or contract made without express authority of law, and that all such unauthorized agreements or contracts shall be null and void. In holding that this section of the constitution had no application, in *Hagler* v. *Small, supra,* we said that the recipients of the compensation did not come within this specification of the constitution, since they did not stand in the relation of public officers, agents, servants or contractors of or with the State. Neither does Mrs. Douglas, the recipient in this case, come within such specification, for she had no such relation with the State. The appropriation to her does not violate this section of the constitution. The appropriation is valid.

The superior court of Cook county erred in refusing to award the writ of *mandamus* as prayed in appellant's amended petition. Its judgment is, therefore, reversed and the cause remanded to that court, with directions to issue the writ as prayed.

*Reversed and remanded, with directions.*

Mr. Justice Stone, specially concurring:

I concur in the judgment entered herein but base such concurrence upon grounds differing from some upon which the conclusion of the court is based. I am of the opinion that this court should sustain this act upon the following considerations:

First: Did Douglas, at the time of his death, hold title to the office of member of the Fifty-ninth General Assembly? Section 2 of article 4 of our constitution, as pointed out in the opinion, provides: "An election for members of the General Assembly shall be held on the Tuesday after the first Monday in November, in the year of our Lord one thousand eight hundred and seventy, and every two years thereafter, in each county, at such places therein as may be provided by law." By section 5 of that article, members

of the General Assembly "before they enter upon their official duties, shall take and subscribe the oath or affirmation" specified in that section. It is also there provided that "any member who shall refuse to take the oath herein presented shall forfeit his office." To forfeit means, according to the standard definition of the term, as the opinion points out, to lose, or to lose the right to. As one may not lose that which he does not have, it follows from the language of the constitution quoted, that one elected to the office of member of the General Assembly has, upon such election, title to that office. This court so held in cases where similar constitutional provisions governing the election and title to the office of circuit and superior court judges were invalid. *People* v. *Sweitzer*, 280 Ill. 436; see, also, *Mayfield* v. *Moore*, 53 id. 428.

Under the constitution, each house of the General Assembly shall "be the judges of the election, returns and qualifications of its members." The act before us was adopted April 23, 1935, (Laws of 1935, page 157,) and is, in effect, a declaration that Douglas was duly elected to the office of member of the Fifty-ninth General Assembly. No one was elected to take his place and no part of the funds previously appropriated as salary to members of the Fifty-ninth General Assembly was paid to any one else. So it must be said that at the time of his death, Douglas held and was entitled to the office of member of the Fifty-ninth General Assembly. True, he could not assert a right to the salary or discharge the duties of that office until he had taken the prescribed oath, but, at the time of his death, he was a member of that General Assembly. The question here, therefore, is not whether the widow of Douglas has a right to collect the salary, which he would have received had he lived, but is rather whether the Fifty-ninth General Assembly had power, by a duly enacted statute, to order payment of that salary to his widow under the circumstances of this case, notwithstanding his death before entering upon his duties.

As is well known, our State constitution is a limitation upon power. All power not by it denied to the people, may, through their representatives in the General Assembly, be exercised. Where doubt exists as to a limitation upon legislative power and, by long usage with public acquiescence, such power has been exercised, courts must be largely influenced by such course and usage when called upon to declare whether such exercise of power is within or without constitutional inhibition. (*Hagler* v. *Small,* 307 Ill. 460; Cooley's Const. Lim. 154.) It appears here, without denial, that payment of salary under circumstances similar to these has, on numerous occasions throughout many years, been ordered by the General Assembly and acquiesced in by the people. The act under consideration here expressly states the purpose to be to pay to the widow of Douglas the salary of the office to which he had been elected and which he held at the time of his death.

It seems to me clear that in this case, where the act is, in effect, but a reappropriation to the use of the dependents of a deceased member of the General Assembly of funds previously appropriated to his use as salary, and which had not been paid out to anyone else, and so no additional expenditure of funds was caused, such exercise of legislative power should not be held to be clearly within the intent of the prohibition of the constitution. Members of the General Assembly are paid their entire salary for the biennium as soon as they take the oath of office and before they enter upon the duties thereof. Had Douglas died immediately after taking the oath, it could scarcely be said that payment of salary to him came within constitutional prohibition, nor could it be expected that one elected to fill the vacancy, if such election had been held, would serve without salary.

The salary of members of the Fifty-ninth General Assembly was appropriated by the Fifty-eighth General Assembly. Nothing in the constitution requires the conclusion that funds duly appropriated as salary to a member

of the Fifty-ninth General Assembly to be elected, are placed beyond the control of that body to order it paid to the dependents of such member, if he die after his election to the office and before he enters upon its duties. Unless prohibition of such use, either express or by necessary implication, is to be found in the constitution, the power exists in the General Assembly.

So long as appropriations by the legislature are of the character of the one before us, the State has not been deprived of funds not already appropriated for the very purpose, and the violation of constitutional safeguards is not free from doubt. In such a case, as hereinbefore stated, courts must be largely influenced by long usage and acquiescence. I am, therefore, of the opinion that for the foregoing reasons, as limited in application to the particular facts of this case, the act is not invalid.

SHAW, C. J., and WILSON, J., dissenting.