NOBLE W. LEE et al., Plaintiffs-Appellants, v. RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO et al., Defendants-Appellees.

(No. 58459;

First District (1st Division)—August 5, 1974.

*Rehearing denied September 12, 1974.*

Melvin B. Lewis, of Chicago, for appellants.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Dennis James Stolfo, Assistant Corporation Counsel, of counsel), for appellees.

Mr. PRESIDING JUSTICE EGAN delivered the opinion of the court:

The plaintiffs, Noble W. Lee and Palmer D. Edmunds, as taxpayers, sought to enjoin the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago, its individual members and the

city treasurer of Chicago from using section 5—212 of the Illinois Pension Code (Ill. Rev. Stat. 1965, ch. 108½, par. 5—212) in computing the pensions of any policeman who had served in the armed forces after he had been placed on the civil service eligible list but before he had been certified. They contended that the act violated article IV, sections 19, 20 and 22, of the 1870 Constitution, and article IV, section 13, and article VIII, section 1, of the 1970 Constitution. The trial court upheld the validity of the act and dismissed the complaint.

Section 5—212 provides that in computing pension eligibility the following period shall be included:

"(d) time that the policeman was engaged in the military or naval service of the United States of America, during which he was passed over on any eligible list posted from an entrance examination, due to the fact that he was in such military or naval service at the time he was called for appointment to the Police Department, to be computed from the date he was passed over on any eligible list and would have been first sworn in as a policeman had he not been engaged in the military or naval service of the United States of America, until the date of his discharge from such military or naval service; provided that such policeman shall pay into this fund the same amount that would have been deducted from his salary had he been a policeman during the aforementioned portion of such military or naval service;    *    *    *."

Article IV, sections 19 and 20, provide as follows:

"§ 19.  The general assembly shall never grant or authorize extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract made, nor authorize the payment of any claim, or part thereof, hereafter created against the state under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void; *Provided,* the general assembly may make appropriations for expenditures incurred in suppressing insurrection or repelling invasion.

§ 20.  The state shall never pay, assume or become responsible for the debts or liabilities of, or in any manner give, loan or extend its credit to or in aid of any public or other corporation, association or individual."

At the time the judgment was entered, sections 19 and 20 of article IV had been replaced by section 1 of article VIII of the 1970 Constitution (See Constitutional Commentary by Robert A. Helman and Wayne W. Whalen) which provides in part:

"§ 1.  General provisions.

(a) Public funds, property or credit shall be used only for public purposes."

The plaintiffs contend, and correctly so, "that one whose induction as a City policeman awaits the completion of his military service is not a City employee while performing military service." Since, the plaintiffs reason, section 19 specifically prohibits payment *after* service has been rendered, *a fortiori*, compensation *before* service has been rendered must also be barred. The plaintiffs' major premise, however, is bottomed on the supposition that an increase in pension rights after service is completed is *always* constitutionally prohibited. Such a supposition is ill founded.

In *Raines v. Board of Trustees*, 365 Ill. 610, 7 N.E.2d 489, the petitioner paid the amounts into a pension fund as required by statute before his retirement in 1927. After retirement he received an annuity of $400. In 1935 the act was amended, and the petitioner paid $200 plus interest into the fund pursuant to the act. He then sought an increase in his annuity to $600. The respondent contended that the act was not meant to apply to persons who had already retired and to construe it otherwise would render it unconstitutional. The court held that the petitioner was entitled to the increased annuity as provided by the act, reasoning that the amount paid by the petitioner was a voluntary contribution to a fund under a statutory elective right rather than a compulsory deduction. It thus distinguished those previous cases which had struck down statutes granting increased pension rights to policemen who had retired and from whom compulsory contributions had previously been exacted: *Porter v. Loehr*, 332 Ill. 353, 163 N.E. 689; *People ex rel. Kroner v. Abbott*, 274 Ill. 380, 113 N.E. 696.

The plaintiffs here seek to distinguish *Raines* by pointing out that participants in the Chicago Police Fund are pensioners rather than voluntary contractual annuitants since the deductions from their salary are mandatory. But the flaw in the plaintiffs' argument is that the mandatory deductions are for the period after certification of employment and not before. The act before us expressly provides that an applicant has an option to pay or not for that period of time he was in military service. Once the participant exercises the option by paying the required sum, we judge, as did the *Raines* court, that a contractual relationship existed between the participant and the State. *Raines v. Board of Trustees*, 365 Ill. at 616.

■■ There are many other sections of the Pension Code which give credit for service rendered in other positions before becoming a participant, provided, as here, the participant pays an additional sum of money including the contribution he would have made plus interest. For exam-

ple, section 18—112 provides that under the judicial retirement system a participant may receive credit for time spent as a justice of the peace, police magistrate, master in chancery, referee in the Municipal Court of Chicago, a member of the General Assembly, a judge of the Court of Claims and State's Attorney. Section 5—214 gives credit for service as a temporary police officer or while serving in the Office of Mayor, the Office of the Corporation Counsel, as an employee of the Policeman's Annuity Benefit Fund, as the head of an organization whose membership consists of members of the Police Department, the Public Vehicle License Commission and the Board of Election Commissioners. Section 2—110.1 provides for credit in the General Assembly retirement system if the legislator had been an elected official in a municipality. Section 7—139(a)(6) provides for credit for a teacher for service previously rendered to an out-of-state local governmental body. If the act before us is constitutionally defective for the reason ascribed by the plaintiffs, it would appear that so also are the sections we have enumerated. As was said in *People ex rel. Douglas v. Barrett*, 370 Ill. 464, 468-469, 19 N.E.2d 340:

> "The people of this State, by not challenging the long line of statutes similar to the one here considered, have signified their approval of such enactments. [Citations.] While this established custom is not conclusive of the constitutionality of the enactments, nevertheless, in determining the validity of legislative action, the uniform, continued and contemporaneous construction of the constitution given by the legislature over a long period of years and generally recognized by the public, is usually given great weight by the courts. [Citations.]"

■■ The plaintiffs contend that section 20 has been violated because no public purpose is served by the act. At the outset we note that the legislature is vested with a large discretion in determining what is for the public good; and courts may not set aside any enactment unless it is clearly evasive of or contrary to constitutional prohibitions. *People ex rel. City of Salem v. McMackin*, 53 Ill.2d 347, 354, 291 N.E.2d 807.

■■ In *Hagler v. Small*, 307 Ill. 460, 476-477, 138 N.E. 849, an Act granted a bonus to persons who served in the armed forces during the First World War. The court upheld the validity of the act against the contention it violated section 20 stating:

> "Therefore that which tends to a greater patriotism and a greater interest in government makes for the welfare of the State as well as the Union. That the purpose to promote such a spirit is a public purpose is therefore not in the realm of debate. Nor is it within the uncertain shadow of doubt that the payments of compensation

provided in this act will tend to encourage such a spirit of loyalty and patriotism. Such recognition demonstrates to those who have given service to their country that in future conflicts, if any there be, the State will not fail to appreciate such service. The erection of monuments and the awarding of swords or medals have always been recognized as means of rewarding meritorious service, and it is not questioned that the legislature may use the public funds for such purposes. While the payment of money may have in it an element of private benefit which is not found in the erection of a statue or the gift of a medal, yet it is no less a recognition of meritorious services, and does not, because it is money, become a private purpose, merely. That the purpose of this act is public and not private seems beyond debate. Numerous courts of this country have held that acts similar to the one before us tend to incite patriotism, encourage the defense of the country in future conflicts and promote the public welfare of the State, and therefore serve a public purpose. [Citations.]"

If, as the plaintiffs contend, the pension credit embodied in the act is, in fact, compensation, the reasoning of *Hagler* is applicable and compelling here. Moreover, the act as amended has the very practical effect of attracting qualified applicants into the police department, which is a paramilitary organization. It would encourage men to re-enter the department at the completion of their military service. The public purpose of anything that would improve a police department in any way, however slight, is self-evident. The plaintiffs concede the constitutionality of sub-paragraph (c) of section 5—212 which provides pension credit for certified police officers for time served in the armed forces while on leave of absence. To make the act of certification the watershed between a public and a private purpose is to elevate form over substance. We judge, therefore, that the act does not violate article IV, sections 19 or 20, of the 1870 Constitution or article VIII, section 1, of the 1970 Constitution.

■■ The last contention of the plaintiffs is that the amendment violates article IV, section 22, of the Illinois Constitution of 1870 which prohibited the general assembly from passing local or special laws in certain enumerated areas and article IV, section 13, of the 1970 Constitution which provides:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination."

The plaintiffs challenge the amendment as special or local legislation because it affects only cities whose population exceeds 500,000 and thereby applies only to the City of Chicago.

In *People v. Palkes*, 52 Ill.2d 472, 477, 288 N.E.2d 469, the court reaffirmed the rule that "a legislative classification based upon population will be sustained where founded on a rational difference of situation or condition existing in the persons or objects upon which it rests and there is a reasonable basis for the classification in view of the objects and purposes to be accomplished." The court upheld a penal statute which by its terms did not apply in municipalities with a population of one million, noting that because the City of Chicago is so much more densely populated than any other city in the State, special problems in relation to law enforcement exist there which justify a legislative classification applicable only to that city.

It is presumed that the legislature surveyed the conditions existing in the population centers of this State and pursued the various means available to the General Assembly not available to the courts in informing itself of the conditions before enacting a classification based on population. (*Du Bois v. Gibbons*, 2 Ill.2d 392, 399, 118 N.E.2d 295.) Those who attack the validity of a classification have the burden of proving that it is unreasonable or arbitrary. (*People ex rel. Vermilion County Conservation District v. Lenover*, 43 Ill.2d 209, 219, 251 N.E.2d 175.) In *Gaca v. City of Chicago*, 411 Ill. 146, 103 N.E.2d 617, the court upheld the constitutionality of an act providing for indemnification of policemen of municipalities of 500,000 or more for any judgments against them arising in the line of duty. The court said at page 154:

> "Was the legislature, therefore, in the instant case, unreasonable in giving the policemen of Chicago additional security because their problems are essentially different from those of policemen in other cities of Illinois? We do not think that it was unreasonable for the General Assembly to conclude that a policeman's job in the city of Chicago is fraught with hazards uncommon to any other city in Illinois. The people of the State of Illinois are vitally interested in law enforcement in the city of Chicago. By increasing the wages and the security of members of their police department an improvement in the personnel of that law-enforcement agency will surely follow."

Preliminary to the passage of the present legislation it must be presumed that some committee of the legislature made a study and survey of conditions in Chicago to find out if the legislation was warranted; the serious crime problems of Chicago have become even more intense than at the time that *Gaca* and *Du Bois* were decided; and the plaintiffs

have not shown that it is unreasonable or arbitrary, other than to suggest that the same benefits might with equal justification be given, for example, to firemen, policemen in other municipalities and prison guards. A similar argument was rejected in *Littell v. City of Peoria*, 374 Ill. 344, 29 N.E.2d 533, and *People ex rel. Moshier v. City of Springfield*, 370 Ill. 541, 19 N.E.2d 598, where minimum wage statutes applicable only to policemen and firemen in municipalities of designated populations were upheld.

The plaintiffs have cited two cases in support of their argument: *Lee v. Retirement Board*, 31 Ill.2d 252, 201 N.E.2d 361, involved a pension credit law enacted in 1959 which applied only to persons on an eligible list posted in 1938 even though other eligible lists had come into existence since that time. The invalidity of the act was conceded by the defendants, but they urged that the act then be construed to read as the present act is worded. This the supreme court refused to do. Hence, the present act followed. *In re Petition for Removal of Struck*, 41 Ill.2d 574, 244 N.E.2d 176, involved a statute that provided for recall of elective officials under the commission form of city government. The court held that there was no rational basis for requiring closer control over commission elected officials than the elected officials of other municipalities. Neither case persuades us to accept the plaintiffs' argument here. The judgment of the circuit court is affirmed.

Judgment affirmed.

GOLDBERG and HALLETT, JJ., concur.