LORAINE ROSE, Plaintiff-Appellant, v. EDWARD ROSEWELL, as County Treasurer, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 87—844

Opinion filed November 24, 1987.

Goldman & Marcus, of Chicago (Arthur R. Ehrlich and Gerald A. Goldman, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Susan Condon, and Catherine A. Quirk, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE STAMOS delivered the opinion of the court:

On August 1, 1986, the plaintiff-appellant, Loraine Rose (Rose), filed a complaint for declaratory judgment against defendant-appellee, Cook County Treasurer Edward Rosewell (Rosewell). Rose alleged that Rosewell had misapplied a county regulation and that as a result she had suffered a significant decrease in salary. Rosewell filed a motion to dismiss. Rose then filed an amended complaint adding the president of the Cook County Board of Commissioners, George Dunne (Dunne), as defendant. On March 3, 1987, the trial court granted Rosewell's motion to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619). Rose filed a notice of appeal on March 20, 1987.

Rose began working for the Cook County Treasurer's office on April 16, 1976. In February of 1984, Rose encountered financial difficulty and requested that she be allowed to withdraw her pension. As a condition to withdrawing her pension, Rose was allegedly required to take a leave of absence for 30 days. Rosewell allegedly represented to Rose that Rose would receive her same job back at the same salary rate, grade and step when she returned to work. The record indicates, however, that Rose did not take a leave of absence but rather resigned from the Cook County Treasurer's office on March 1, 1984. When Rose returned to work on April 2, 1984, she was classified as a new employee and was paid at the grade 9, step 1, level, which is the minimum salary for an employee in the grade 9 category. Before Rose resigned, she was paid at the grade 9, step 6, level.

Rose was properly classified as a new employee when she returned to work on April 2, 1984. The Cook County Board of Commissioners (the Board) determines the salaries of Cook County employees. (Ill. Rev. Stat. 1985, ch. 34, par. 1101.) The Board has the authority to create a position-classification agency and give to that agency the power to establish and maintain a position-classification and compensation plan (plan) for all Cook County employees, including those employees working for the Cook County Treasurer. (Ill. Rev. Stat. 1985, ch. 34, par. 1102.) The plan states that a new county employee shall be paid "the minimum salary provided in the salary grade

in which the job has been placed." The plan further states that an employee "who is separated from the county payroll for *reasons other than disability or leave of absence* shall be eligible to receive the salary received at the time of separation *if* the employee *returns within 30 calendar days* from the date of separation." (Emphasis added.)

The question arises: At what salary step should Rose have been paid when she returned to work for the Cook County Treasurer? Rose argues that she should have received compensation at the grade 9, step 6, level when she returned to work. Rose claims that she took a "leave of absence" and that she did not have to return within 30 calendar days in order to receive compensation at the same level as when she left her employment. Furthermore, Rose argues that if the 30-calendar-day requirement did apply to her, she did comply with it. Rose contends that she took her leave of absence on March 1, 1984, and that she would have had to return to work on March 31, 1984, to fulfill the 30-calendar-day requirement. Because March 31, 1984, was a Saturday, Rose states that she was unable to return to work on that day, but did return to work on the first available day, which was Monday, April 2, 1984. Thus, Rose concludes that she did, in fact, fulfill the 30-calendar-day requirement.

On the other hand, the defendants claim that Rose should have and did receive compensation at the grade 9, step 1, level when she returned to work. The defendants argue that the 30-calendar-day requirement applied to Rose and that she failed to fulfill it. The defendants concede that if Rose had taken a leave of absence, the 30-calendar-day requirement would not have been applicable. The defendants note, however, that Rose did not take a leave of absence but rather resigned. Thus, the defendants conclude that the 30-calendar-day requirement did apply to Rose. Furthermore, the defendants strongly disagree with Rose's contention that she fulfilled the 30-calendar-day requirement when she returned to work on April 2, 1984. The defendants argue that because Rose returned after and not within the 30 days, she did not comply with the 30-calendar-day requirement.

The issue thus becomes whether Rose took a leave of absence or whether she resigned from the Cook County Treasurer's office. If Rose took a leave of absence, the 30-calendar-day requirement would be irrelevant. If, however, Rose resigned, the court would have to decide whether Rose fulfilled the 30-calendar-day requirement. Rose sought to leave her employment for the sole purpose of withdrawing her pension funds. Whether Rose took a leave of absence or whether she resigned hinges on what is required of an employee who seeks to collect his pension funds. The Pension Code provides that an em-

ployee must withdraw (be discharged or resign) before he is entitled to receive his pension funds. In pertinent part, the Pension Code provides:

> "[A]n employee *** with less than 10 years of service who *withdraws* before age 60, shall be entitled to a refund of the total sums accumulated to his credit as of date of withdrawal ***. *** An employee withdrawing on or after January 1, 1984, may receive a refund only after he has been off the payroll for at least 30 days during which time he has received no salary." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 108½, par. 9—164.)

The term withdraw is defined as "discharge or resignation of an employee." Ill. Rev. Stat. 1985, ch. 108½, par. 9—116.

Rose resigned from the Cook County Treasurer's office on March 1, 1984. As stated earlier, Rose contends that she did not resign, but rather took a leave of absence from her employment. In his affidavit, Martin F. Lynch (Lynch), payroll director for the Cook County Treasurer's office, stated that he had reviewed Rose's personnel file and found that the file indicated that Rose had resigned on March 1, 1984, and had been reinstated on April 2, 1984. Furthermore, in ruling on Rosewell's section 2—619 motion, the trial court found that Rose's pleadings and the act of accepting her pension monies constituted a judicial admission that Rose had resigned from the Cook County Treasurer's office. Thus, the evidence supports the conclusion that Rose did in fact resign from her position at the Cook County Treasurer's office.

■■ Rose is thus subject to the 30-calendar-day requirement. Rose did not meet this requirement. The plan specifically states that to receive his prior level of compensation, an employee must return to the payroll *within* 30 calendar days. Rose did not do this. Rose attempts to justify her return on Monday, April 2 by pointing out that the thirtieth day (the last possible day of her return) fell on a Saturday. If the plan were meant to measure the 30-day time period by working days, it would have explicitly said so. Instead, the plan set the requirement as 30 calendar days. It was necessary, therefore, for Rose to return to work before Saturday, March 31, in order to fulfill the "within 30" requirement. Rose has tried to have it both ways. She has endeavored to remain off of the payroll long enough to withdraw her pension funds and at the same time has sought to get back onto the payroll in sufficient time to receive her previous level of compensation. This tactic is exactly what the time limitation requirements were meant to prevent. While Rose has resigned and has enjoyed the benefit of her

pension monies, she cannot now return to work and enjoy compensation at the same level as when she resigned. If this practice were permitted, the pension fund would soon be placed in a precarious financial condition.

The defendants were not estopped from reducing Rose's salary to the minimum level upon her return to work on April 2, 1984. Rose alleges that Rosewell assured her that she would still hold the same job at the same grade and step upon her return to work. Rose contends that because of these misrepresentations, the defendants were estopped from reducing her salary to the minimum level. While Rose takes the position that the doctrine of estoppel should be applied against the county, the defendants contend that the doctrine of estoppel should not be applied.

Estoppel against a public body can be found if the municipality performed an affirmative act that induced the litigant to substantially rely upon it and induced the complained-of action. (*County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 13, 405 N.E.2d 1376.) The affirmative act which induces the reliance must be the act of the governmental body itself; for example, legislation. (*Patka*, 85 Ill. App. 3d at 13.) Furthermore, estoppel against public bodies is not favored. (*Monarch Gas Co. v. Illinois Commerce Comm'n* (1977), 51 Ill. App. 3d 892, 898, 366 N.E.2d 945.) Where governmental activities of the State are concerned, especially those relating to public revenue, estoppel cannot be invoked absent extraordinary circumstances. (*People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.* (1973), 56 Ill. 2d 210, 220, 306 N.E.2d 7; *Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 4-5, 280 N.E.2d 437.) Moreover, estoppel may not be used to defeat the effective operation of a policy that has been adopted to protect the public. *Premier Electrical Construction Co. v. Board of Education* (1979), 70 Ill. App. 3d 866, 872, 388 N.E.2d 1088.

In the case at bar, Rose is seeking to estop the county from reducing her salary. The county is but a creature of the State and may exercise only those powers that the legislature had expressly or impliedly delegated. (*Heidenreich v. Ronske* (1962), 26 Ill. 2d 360, 362, 187 N.E.2d 261.) Thus, the county can be classified as a public body and estoppel may be used against the county if the county had performed an affirmative act that Rose had substantially relied upon and had induced her cause of action. *County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 13, 405 N.E.2d 1376.

In Rose's case, Rosewell, who has no control whatsoever over the county payroll, performed the alleged affirmative act. The doctrine of estoppel is not met here for at least two reasons. First, Rosewell's alleged misrepresentations were not acts of the governmental

body itself. Rather, the misrepresentations were acts of a county agent who exercised no control over the county payroll. Second, it is questionable whether Rose substantially relied upon Rosewell's alleged misrepresentations. Rose should have been aware that Rosewell was not in control of the payroll. Furthermore, if Rose had read the plan carefully, she would have been aware of the potential salary conflict and discussed it with the appropriate person previous to her resignation.

The county pays its employees from the public revenue (tax dollars). A decrease or increase in a county employee's salary, therefore, relates to the public revenue. Estoppel against public bodies is not favored, especially where it relates to those governmental activities involved with the public revenue, unless extraordinary circumstances are present. (*People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.* (1973), 56 Ill. 2d 210, 220, 306 N.E.2d 7.) The fixing of compensation has not been held to be an extraordinary circumstance. (See *Anderson v. Board of Trustees* (1978), 56 Ill. App. 3d 937, 939, 372 N.E.2d 718.) Therefore, because Rose can present no extraordinary circumstances here, estoppel against the county will fail.

■ Finally, the policy that the county has adopted that does not permit employees who withdraw their pensions to return to work at the same salary level works to protect the public. This policy prevents county employees from draining the pension fund and then returning to previous high levels of compensation. Thus, Rose should not be allowed to assert estoppel so as to defeat this policy.

Illinois case law does not favor Rose's estoppel theory. The following tax case provides a good analogy to the case at bar. (See *Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 280 N.E.2d 437.) In *Austin*, the plaintiff submitted its books and records to the Department of Revenue (Department). The defendant then issued a "Notice of Tax Liability" to the plaintiff and the plaintiff paid the amount without protest on the following day. The Department then requested that the court compel production of the plaintiff's books and records for reassessment. The plaintiff did not produce the records and books and contended that the Department was estopped from further investigation because the Department had already assessed the tax liability and had accepted payment. The court disagreed with the plaintiff's position. The court held that "where the public revenues are involved, public policy ordinarily forbids the application of estoppel to the State." (*Austin*, 51 Ill. 2d at 4-5.) The court goes on to state that the mistakes or misinformation of the government's agents will not estop the government from collecting the

taxes. *Austin*, 51 Ill. 2d at 5.

Although *Austin* does not involve salaries, but rather taxes, it can be easily analogized to the case at bar. In the case at bar, Rosewell, a county agent, allegedly misinformed Rose that she would receive compensation at the grade 9, step 6, level when she returned to work. Thus, Rosewell, like the Department in *Austin*, misinformed the plaintiff. Rosewell supposedly told Rose that her salary (taken from public revenues) was going to be higher (using more of the public revenues) than it actually was. Moreover, Rosewell had no control in setting the salary levels of county employees; the Board exercises that power. Thus, the county, like the Department in the *Austin* case, cannot now, because of Rosewell's error, be estopped from properly handling the county's financial matters.

Additionally, the Illinois Supreme Court has decided at least two cases quite similar to the instant case. (See *Chicago Patrolmen's Association v. City of Chicago* (1974), 56 Ill. 2d 503, 309 N.E.2d 3; *Gathemann v. City of Chicago* (1914), 263 Ill. 292, 104 N.E. 1085.) In *The Chicago Patrolmen's Association,* several members of the City of Chicago police department sued the City of Chicago (City). The plaintiffs claimed that the City had to pay the plaintiffs certain "step" and "longevity" salary increases for the year 1972. The plaintiffs prevailed at the trial level and the City appealed.

On appeal, the plaintiffs argued that they had relied upon representations that the superintendent of police had made concerning the salary that they would receive in the future. The appellate court rejected the plaintiffs' argument. The appellate court first noted that the superintendent of police did not fix the salary of police officers and that he was not authorized to make representations concerning the plaintiffs' future salaries. (*Chicago Patrolmen's Association*, 56 Ill. 2d at 507.) Furthermore, the appellate court noted that any reliance upon the superintendent's representations would have been unwarranted. *Chicago Patrolmen's Association*, 56 Ill. 2d at 507.

In *Gathemann*, the plaintiff brought an action against the City of Chicago to recover wages for overtime work that he had performed. Among his other contentions, the plaintiff argued that he should receive the extra compensation because the chairman of the finance committee had represented to him that he was entitled to this extra compensation. (*Gathemann*, 263 Ill. at 298.) In disagreeing with the plaintiff, the court stated that "[p]romises to pay a municipal officer an extra fee or sum beyond that fixed by law are not binding upon the municipality, even though he rendered the services and exercised a greater degree of diligence than could legally have

been required of him." *Gathemann*, 263 Ill. at 298.

*Chicago Patrolmen's Association* and *Gathemann* are very similar to the case before this court. In both *Chicago Patrolmen's Association* and *Gathemann*, the plaintiffs claimed that they were entitled to additional compensation. The plaintiffs based their claims on the fact that a person of authority had represented that the plaintiffs would receive this compensation. In both cases, the court rejected this argument and held that the alleged misrepresentation would not estop the municipality from dealing with the salary issues as it saw fit.

In the case at bar, Ross claims that she is entitled to a higher level of compensation. Rose, like the plaintiffs above, also bases her claim upon the fact that Rosewell represented to her that she would receive the grade 9, step 6, level of compensation. As in the two cases above, the county should not be estopped from paying Rose the salary (grade 9, step 1, level) that the Board had determined was proper. In sum, Rose's contention that the defendants were estopped from reducing her salary fails for all of the above reasons.

In view of the foregoing, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.