LOUIS GORGEES, Plaintiff-Appellant, v. RICHARD M. DALEY, Mayor of the City of Chicago, *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—91—1374

Opinion filed December 15, 1993.

Thomas E. Johnson and Phillip H. Snelling, both of Johnson, Shaaf, Jones & Snelling, of Chicago, for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Mardell Nereim, Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court:
This action was initially brought by plaintiff, Louis Gorgees, in the circuit court of Cook County pursuant to section 3—101 of the Code of Civil Procedure (section 3—101) (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 (now codified as 735 ILCS 5/3—101 (West 1992))) seeking the circuit court's administrative review of a decision by the Liquor Appeal Commission of the City of Chicago (hereinafter the Liquor Appeal Commission) affirming the denial of a liquor license to plaintiff by the mayor's license commission. Richard M. Daley, mayor of the City of Chicago, and local license commissioner (collectively hereinafter the City) are named defendants to this action. It is from the circuit court's order affirming the Liquor Appeal Commission's decision that plaintiff appeals to this court pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

For the reasons which follow, we affirm in part and reverse in part.

FACTUAL BACKGROUND
Plaintiff has owned the property at 1467 West Montrose Avenue in Chicago, Illinois, since 1980. The property is across the street and less than 100 feet from the Southern School. In the fall of 1987, plaintiff began to explore the possibility of converting the property from a hardware store to a restaurant and contacted his alderman, Helen Shiller, about the possibility of serving liquor with the meals to be served at the proposed restaurant. Plaintiff inquired as to whether the zoning for the property would permit a restaurant, and whether he would be able to serve liquor with the meals, although he did not ask about a liquor license at that time.

George Adkins, Shiller's chief of staff, contacted the appropriate city agencies and informed plaintiff that he would be able to serve liquor with meals. Additionally, at that time, the mayor's license commission published a handbook for liquor license applicants which purportedly stated, in pertinent part, that no license would be issued for the retail sale of alcoholic liquor within 100 feet of any school,

but that this prohibition would not apply to restaurants where the sale of alcohol was not the principal business of the establishment. However, the pamphlet also stated that it was important that prospective applicants keep two things in mind. First, that the applicant must meet personal qualifications and requirements of city and State regulations; and, secondly, that the location of the intended business must also meet qualifications and requirements of city and State regulations.

In April 1988, plaintiff began conversion of the premises to a restaurant. Ultimately, plaintiff invested approximately $250,000 in the project. In late 1988 or early 1989, after construction began, plaintiff had another conversation with Shiller about obtaining a liquor license. In early 1989, Shiller's neighborhood zoning committee met to discuss plaintiff's restaurant. On March 4, 1989, Shiller told a meeting of her committee that she would look into the possibility of a liquor license for plaintiff's restaurant.

Soon after that meeting, Shiller had a conversation with Sidney Jones, director of the mayor's license commission. This conversation took place in the hallway of the second floor of Chicago's city hall. In a conversation she described as informal, Shiller asked Jones if it would be all right for liquor to be served in a restaurant that was located within 100 feet of a school, if the serving of alcohol was less than 50% of the business and merely incidental to the meal. Jones indicated to Shiller that there was not a problem with serving liquor with food.

On August 15, 1989, plaintiff opened the Mesopotamia Restaurant on the premises. On August 25, 1989, plaintiff filed an application for a liquor license with the mayor's license commission. On November 13, 1989, the mayor's license commission, citing the fact that the restaurant's location was within 100 feet of a school, notified plaintiff that his application had been disapproved. Plaintiff appealed this decision to the Liquor Appeal Commission.

On January 17, 1990, a hearing was held by the Liquor Appeal Commission at which plaintiff argued that the City was estopped from denying him a license. Subsequently, the Liquor Appeal Commission affirmed the decision of the mayor's license commission to deny plaintiff's application. Plaintiff then filed a petition for rehearing with the Liquor Appeal Commission which was denied on May 29, 1990.

On July 3, 1990, plaintiff filed a complaint in the circuit court for administrative review. In his complaint, plaintiff asserted that it was improper for the City to deny him a license and that section 6—11 of the Liquor Control Act of 1934 (hereinafter section 6—11) (Ill. Rev.

Stat. 1989, ch. 43, par. 127 (now codified as 235 ILCS 5/6—11 (West 1992))), which prohibits the issuance of liquor licenses to business establishments located within 100 feet of a school in cities with a population greater than 500,000, violated both the Federal and State constitutions. Plaintiff subsequently voluntarily dismissed all claims based upon the United States Constitution.

In its order of March 27, 1991, the circuit court affirmed the denial of a liquor license to plaintiff. Specifically, the circuit court held that there was no showing that plaintiff had relied on the pamphlet and that he had essentially relied upon the advice of Shiller. The circuit court concluded that an alderman, whose job is legislative, cannot bind the City by his or her advice to a constituent, particularly where binding the City would result in violation of a State statute. Additionally, the circuit court further held that it did not have the authority to review the constitutionality of section 6—11 within the context of an administrative review proceeding. Plaintiff then filed a timely notice of appeal.

## ISSUES PRESENTED ON APPEAL

On appeal, plaintiff contends that: (1) the trial court erred by ruling that the City was not estopped from denying plaintiff a liquor license; (2) the trial court erred in failing to review the constitutionality of section 6—11; and (3) section 6—11 violates both section 2 of article I and section 13 of article IV of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 2, art. IV, § 13).

## OPINION

We first turn to plaintiff's contention that the trial court erred in ruling that the City was not estopped from denying him a liquor license. The doctrine of equitable estoppel, or estoppel *in pais*, is a doctrine by which an individual may be precluded by his act or conduct from asserting a right which he might otherwise have. (*Greer v. Canter Oil Co.* (1940), 373 Ill. 168, 176-77, 25 N.E.2d 805.) Invocation of the estoppel doctrine will generally arise where a party's statements or conduct induces another to do something that he would otherwise not have done but for the statements or conduct of the other, and where the one guilty of the statements or conduct should not be allowed to deny his utterances or acts to the detriment of the innocent party. (*Lindahl v. City of Des Plaines* (1991), 210 Ill. App. 3d 281, 295, 568 N.E.2d 1306.) The purpose of the doctrine is to prevent fraud or injustice. *Du Mond v. City of Mattoon* (1965), 60 Ill. App. 2d 83, 89, 207 N.E.2d 320.

■ While it has long been the law in Illinois that the doctrine of equitable estoppel may be applied to municipalities (see, *e.g., Chicago, Rock Island & Pacific R.R. Co. v. City of Joliet* (1875), 79 Ill. 25), a finding of estoppel against a public entity is not favored. (*Bank of Pawnee v. Joslin* (1988), 166 Ill. App. 3d 927, 938, 521 N.E.2d 1177; see also *Rose v. Rosewell* (1987), 163 Ill. App. 3d 646, 651, 516 N.E.2d 885.) The doctrine should not be invoked against a public body except under compelling circumstances, where such invocation would not defeat the operation of public policy. (*People ex rel. Brown v. Illinois State Troopers Lodge No. 41* (1972), 7 Ill. App. 3d 98, 105, 286 N.E.2d 524; see also *Lindahl*, 210 Ill. App. 3d at 295.) Two prerequisites need to be met in order to invoke the doctrine of equitable estoppel: (1) an affirmative act on the part of the municipal corporation; and (2) substantial reliance must have been induced by the act. *Du Mond*, 60 Ill. App. 2d at 89-90.

The affirmative act which induces a party must be an act of the municipal entity itself, such as legislation, rather than the unauthorized act of a ministerial officer. Generally, a public body cannot be estopped by an act of its agent beyond the authority expressly conferred upon that official, or made in derogation of a statutory provision. *Lindahl*, 210 Ill. App. 3d at 295; *Bank of Pawnee*, 166 Ill. App. 3d at 939; *Rose*, 163 Ill. App. 3d at 651.

■ In the case *sub judice*, even if we were to assume, *arguendo*, that the first element of estoppel were met (*i.e.*, that the City had taken some sort of affirmative action), we nevertheless fail to perceive how plaintiff has relied upon the City's actions to his detriment. First, the evidence does not establish that plaintiff opened his restaurant upon a belief that he could obtain a liquor license. This conclusion is bolstered by the fact that plaintiff opened his restaurant on August 15, 1989, before he had even applied for a license. Secondly, a party wishing to invoke the doctrine must demonstrate that, in the absence of estoppel, he will suffer a substantial loss. (*City of Chicago v. Unit One Corp.* (1991), 218 Ill. App. 3d 242, 246, 578 N.E.2d 194.) To show reliance, a litigant must establish that he has expended monies or incurred liability that would be lost. (*La Salle National Bank & Trust Co. v. City of Chicago* (1984), 128 Ill. App. 3d 656, 664, 470 N.E.2d 1239.) The record before us is devoid of any evidence that suggests plaintiff will lose his investment if he does not receive a liquor license. While it is surely possible that plaintiff's restaurant would be more profitable if it had a liquor license, that alone is not the type of detriment that can estop the City and enforcement of section 6—11. (See *Unit One*, 218 Ill. App. 3d at 247.) Accordingly, we find that the circuit court did not err in ruling that

the City was not estopped from refusing to issue plaintiff a liquor license.

Still to be considered is plaintiff's argument that the circuit court erred in failing to review the constitutionality of section 6—11. Clearly, this was error by the circuit court. The appellate court has held that a constitutional question can be raised in a complaint for administrative review. (See *Sturm v. Block* (1979), 72 Ill. App. 3d 306, 390 N.E.2d 912; *Head-On Collision Line, Inc. v. Kirk* (1976), 36 Ill. App. 3d 263, 343 N.E.2d 534.) Accordingly, we shall address plaintiff's contentions with regard to the constitutionality of section 6—11.

Section 6—11 provides, in pertinent part, as follows:

> "No license shall be issued for the sale at retail of any alcoholic liquor within 100 feet of any church, school other than an institution of higher learning, hospital, home for the aged or indigent persons or for veterans, their spouses or children or any military or naval station, provided, that this prohibition shall not apply to hotels offering restaurant service, regularly organized clubs, or to restaurants, food shops or other places where sale of alcoholic liquors is not the principal business carried on if such place of business so exempted is not located in a municipality of more than 500,000 persons ***." (Ill. Rev. Stat. 1989, ch. 43, par. 127 (now codified as 235 ILCS 5/6—11 (West 1992)).)

Clearly, section 6—11 draws a distinction between municipalities with a population over 500,000 and those with inhabitants of 500,000 and less. Thus, the question for this court to answer is whether this distinction passes constitutional muster.

■ Illinois courts have upheld the constitutionality of legislative classifications based upon population. (See, *e.g.*, *Chicago National League Ball Club v. Thompson* (1985), 108 Ill. 2d 357, 483 N.E.2d 1245; *People v. Palkes* (1972), 52 Ill. 2d 472, 288 N.E.2d 469; *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 118 N.E.2d 295; *Starnawski v. License Appeal Comm'n* (1981), 101 Ill. App. 3d 1050, 428 N.E.2d 1102; *Lee v. Retirement Board of the Policeman's Annuity & Benefit Fund* (1974), 22 Ill. App. 3d 600, 317 N.E.2d 758.) Our supreme court in *Du Bois* definitively set forth the standard by which due process and equal protection challenges are measured as follows:

> "[A] legislative classification based upon population will be sustained where a rational difference of situation or condition existing in the persons or objects upon which it rests and there is a reasonable basis for the classification in view of the objects and purposes to be accomplished. [Citations.] Legislation is not special or local merely because it may operate only in a single place where the condition necessary to its operation exists or because, at the time of its

enactment, it can be applied only to one city in the State. \*\*\* Only if it can be said that the classification is clearly unreasonable and palpably arbitrary will the courts act to hold the classifying enactment invalid. [Citation.] It must appear that there is no fair reason for the law which would not require with equal force its extension to other cities of smaller population which are not affected before we should be warranted in interfering with legislative judgment." (*Du Bois,* 2 Ill. 2d at 398-99.)

Though not identical, the constitutional protections involved in a claim that a legislative provision violates the special-legislation provision of the 1970 Constitution (Ill. Const. 1970, art. IV, § 13) is generally judged by the same standard that is used in considering a claim that equal protection has been denied. *Chicago National League Ball Club,* 108 Ill. 2d at 368; see also *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 412 N.E.2d 151; *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 367 N.E.2d 1325.

■ In the case *sub judice,* we do not believe section 6—11 is clearly unreasonable or palpably arbitrary; rather, we find the population distinction drawn by section 6—11 to have a rational basis. As the appellate court stated in *Rincon v. License Appeal Comm'n* (1978), 62 Ill. App. 3d 600, ·605-06, 378 N.E.2d 1281, "[d]ensely populated municipalities present problems of complexity and volume not encountered in less populated municipalities." A classification is not arbitrary "if any state of facts can reasonably be conceived that would sustain it." (*Rincon,* 62 Ill. App. 3d at 605.) Because the schools in Chicago are typically bigger and more children may walk past or congregate near clubs and food shops in the immediate area, the General Assembly could reasonably conclude that there is a greater likelihood of school children coming into contact with intoxicated individuals or alcohol. Moreover, our General Assembly could have determined that the added cost, in terms of regulation and added police patrols, was quite simply not worth whatever benefit there was to be derived from allowing the sale of liquor near a school or church.

Additionally, the General Assembly could have concluded that in a smaller town with a smaller commercial district, prohibiting liquor licenses for all businesses located within 100 feet of a school, church or any of the other statutorily enumerated places might effectively eliminate all possibility of a liquor license in the commercial area of such a small community. Thus, for this reason, the General Assembly may have exempted restaurants, hotels, clubs, and food shops in smaller municipalities from the prohibition of liquor licenses near schools and the other statutorily prohibited places. Therefore, we

150

find section 6—11 to have a rational basis and, consequently, it is in harmony with our State Constitution.

## DISPOSITION

In light of above-stated reasons, we reverse that part of the circuit court of Cook County's judgment which disallowed review of the constitutionality of section 6—11 and affirm the judgment in all other respects.

Affirmed in part and reversed in part.

RIZZI and GREIMAN, JJ., concur.