STATE EX REL. HOLMES and others, Respondents, vs. KRUEGER, City Treasurer, Appellant.

*October 11—November 8, 1955.*

131

For the appellant there was a brief by *Walter J. Mattison,* city attorney of Milwaukee, and *Alan H. Steinmetz,* assistant city attorney, and oral argument by *Mr. Steinmetz.*

For the respondents there was a brief by *Bender, Trump, McIntyre, Trimborn & Godfrey,* attorneys, and *Walter H. Bender* of counsel, all of Milwaukee, and oral argument by *Walter H. Bender.*

BROADFOOT, J.   Upon this appeal the defendant contends: (1) That sec. 38.25, Stats., is void because it is a grant of extra compensation by the legislature to public servants after the services have been rendered and to public contractors after the contracts have been entered into, in violation of sec. 26, art. IV of the Wisconsin constitution; (2) that sec. 38.25 is invalid in that it is an attempt to take public property for a private purpose; (3) that the contracts which sec. 38.25 attempts to create are void for lack of adequate consideration; and (4) that sec. 38.25 violates the equal-protection clauses of both the United States and Wisconsin constitutions because it is discriminatory in that it grants to a certain class of citizens privileges and advantages which are denied to other citizens of the state.

At the same session of the legislature in 1951 there was enacted sec. 42.535, Stats., which provided for additional benefits to teachers who had taught school in the state outside

of the city of Milwaukee and who had retired before June 30, 1951. That statute was considered in the case of *State ex rel. Thomson v. Giessel,* 262 Wis. 51, 53 N. W. (2d) 726. This court held that sec. 42.535 was unconstitutional in that it was a violation of sec. 26, art. IV of the constitution, which reads as follows:

"EXTRA COMPENSATION; SALARY CHANGE. Section 26. The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into; nor shall the compensation of any public officer be increased or diminished during his term of office."

The defendant therefore argues that sec. 38.25, Stats., similar in some respects to the statute held by this court to be unconstitutional, is likewise unconstitutional. A review of the prior decisions of this court interpreting said constitutional provision compels us to hold otherwise. In the case of *Board of Supervisors v. Hackett,* 21 Wis. \*613, \*617, this court said:

"I think the word 'compensation,' as used in sec. 26, art. IV of the constitution, signifies the return for the services of such officers as receive a fixed salary *payable out of the public treasury of the state;* and that it does not, and was not intended to apply to the remuneration of that large class of officers, such as sheriffs, constables, clerks of courts, and others, who receive specific fees for specific services as they are from time to time required to render them. . . . I think the limitation applies only to those salaried officers paid by the state, and not to those minor ones who, according to the usual course of public business, are paid by fees taxed or allowed for each item of service as it is rendered. The treasurer of a county is such an officer, . . ." (Emphasis supplied.)

Other cases in which this court has held that the term "public officers" as used in said constitutional provision referred only to officers paid out of the public treasury of the

state are *Rooney v. Supervisors of Milwaukee County,* 40 Wis. 23; *State ex rel. Martin v. Kalb,* 50 Wis. 178, 6 N. W. 557; and *State ex rel. Sommer v. Erickson,* 120 Wis. 435, 98 N. W. 253. In *Sieb v. Racine,* 176 Wis. 617, 187 N. W. 989, this court had before it an action brought by a taxpayer to restrain the defendant city from paying to its city superintendent of schools an increase in his salary which was claimed to be illegal partially because the raise was granted after a three-year employment contract had been entered into and during the time covered by the contract. In its determination in that action this court said (p. 624) :

"The final question, then, is whether the board of education had power to modify its contract with the superintendent. Sec. 26 of art. IV of the state constitution prohibits the legislature from granting any extra compensation to any public officer, agent, servant, or contractor after the services shall have been rendered or the contract entered into. This declares a wise public policy. It may be stated as a general proposition that those charged with authority and responsibility in the management of public affairs should not be permitted to deny the public the benefits of an advantageous contract. There is much reason in the view that the contract entered into between the board of education and the superintendent constituted something of value which belonged not to the board of education but to the city; that the board of education, having only such powers and authority as are delegated to it either expressly or by implication, was without power to surrender or give away the thing of value represented in the contract. However, it seems to be generally recognized that, unless forbidden by law, the salary of a public officer may be changed from time to time even during the continuance of his term. . . . *It has been held that the constitutional provision referred to applies only to public officers whose salaries are paid out of the state treasury. Milwaukee Co. v. Hackett,* 21 Wis. 613; *State ex rel. Martin v. Kalb,* 50 Wis. 178, 6 N. W. 557; *State ex rel. Sommer v. Erickson,* 120 Wis. 435, 98 N. W. 253. *Such being the limit of its application so far as officers are concerned, it follows*

*that it applies only to contractors who are paid out of the state treasury.* The public policy prompting the constitutional provision is made applicable to county and city officers by express statutory enactment. Sec. 59.15; sub (6) (b), sec. 62.09, Stats. However, *there is no similar provision applicable to county or city contracts,* and in analogy to the rule that the salary of officers may be raised or diminished in the absence of law forbidding the same, *it must be held that it is competent for city authorities having the power to contract with employees to consent to an abolition of their existing contracts and to provide for an increase of their compensation during the period for which they are under a contract of employment.*

"Our conclusion, therefore, is that it was competent for the board of education to abrogate the various contracts set forth in the statement of facts and to enter into new contracts with the superintendent affording him higher compensation, and that the appellant is not entitled to the relief asked." (Emphasis supplied.)

In *State ex rel. Thomson v. Giessel, supra,* this court did not hold that the retired teachers were public officers but that they were servants or contractors and that the legislature could not grant to them any extra compensation after the services had been rendered or the contracts entered into. It is apparent from the cases cited above that the petitioners herein and the other annuitants who qualified under the provisions of sec. 38.25, Stats., are not the kind of servants or contractors who are covered by the prohibition of sec. 26, art. IV of our constitution.

In connection with defendant's second contention our attention is directed to the following quotation from *State ex rel. Thomson v. Giessel, supra* (p. 63) :

"When they free themselves from that by relying only upon the new consideration to support a new contract they put themselves into the class of other private citizens, with former teaching status as an identifying mark only, and the special benefit granted them is a use of public funds for a private

interest and, hence, unconstitutional. *State ex rel. Smith v. Annuity & Pension Board* (1942), 241 Wis. 625, 6 N. W. (2d) 676; *Attorney General v. Eau Claire* (1875), 37 Wis. 400, 436."

It is argued that the above statement is determinative of this issue. The above quotation was addressed to an argument in that case that the statute provided for a new contract between the state and the retired teachers. That case was decided upon the ground that the effect of sec. 42.535, Stats., was to grant extra compensation to public servants after the services were rendered and to public contractors after the contracts were entered into, in violation of sec. 26, art. IV of the state constitution. In that case we were dealing with retired teachers who had rendered services in this state outside of the city of Milwaukee. In that case we were dealing with a different section of the statutes, with teachers who were to be paid directly from the state treasury, and upon a petition that raised different issues and which alleged different facts than those presented here. After sec. 42.535 had been found to be unconstitutional the legislature enacted a new statute that accomplished the same result and that statute was held to be constitutional in the second state teachers' retirement case, *State ex rel. Thomson v. Giessel,* 265 Wis. 558, 61 N. W. (2d) 903. Now retiring teachers who served within Wisconsin, but outside of Milwaukee, receive additional retirement benefits.

Each case must be decided upon the facts and issues presented. This court has held several times that the expenditure of public funds for a moral obligation is an expenditure for a public purpose. *State ex rel. Voelkel v. Thiessen,* 232 Wis. 126, 286 N. W. 561; *Will of Heinemann,* 201 Wis. 484, 230 N. W. 698; *State ex rel. Larson v. Giessel,* 266 Wis. 547, 64 N. W. (2d) 421. In each of these cases legislation had been enacted that authorized payments to individuals. In each case the legislation was claimed to be unconstitutional for the

reason that it provided for the expenditure of public funds for a private purpose. In each of the above cases the legislation was held to be constitutional by this court. The question of moral obligation was not before us in the first state teachers' retirement case, although it was contended that the payment could be made out of gratitude for the services performed by the group of teachers affected by the statute then before us. There is a distinction between gratitude and a moral obligation. The following quotation from page 63 of the pocket supplement to 42 Am. Jur., under the title "Public Funds" illustrates that point:

"It is generally recognized that a moral obligation is more than a mere desire to do charity or to appropriate money in acknowledgment of a gratitude. It is an obligation which, though lacking any foundation cognizable in law, springs from a sense of justice and equity, that an honorable person would entertain, but not from a mere sense of doing benevolence or charity."

Because of the facts, issues, and circumstances in this case we hold that the expenditures authorized under sec. 38.25, Stats., are in satisfaction of a moral obligation and the expenditures are for a public purpose.

This holding also disposes of the third contention, that the expenditures are void for lack of adequate consideration. The contributions directed by the statute together with the moral obligation are an adequate consideration for the payments.

The final contention of the defendant is in essence that the designation of the particular persons affected by the statute results in a classification not permitted by the federal and state constitutions. That argument was raised in the second state teachers' retirement case, *State ex rel. Thomson v. Giessel,* 265 Wis. 558, 567, 61 N. W. (2d) 903. In that case the following quotation from *State ex rel. Dudgeon v. Levitan,* 181 Wis. 326, 344, 193 N. W. 499, was cited:

"We do not regard this law as a police regulation. It is a law intended to promote the educational interests of the state. It relates to the conditions upon which the public will contract with those undertaking to teach in the schools of the state. As there is no constitutional requirement that such contract shall operate uniformly throughout the state, the state is at perfect liberty to prescribe one form of contract in one county and another form in another county, or one form of contract in one educational institution and a different form in another."

That also disposes of the issue of improper classification advanced in this case. Therefore, we hold that sec. 38.25, Stats., is a valid enactment by the legislature.

*By the Court.*—Order affirmed.

GEHL, J. (*dissenting*). The only difference between sec. 42.535, the statute which we struck down as invalid in *State ex rel. Thomson v. Giessel* (1952), 262 Wis. 51, 53 N. W. (2d) 726, and sec. 38.25, which is under attack here, is that the former was intended to provide additional benefits to retired teachers throughout the state, and the latter would provide additional benefits only to the retired teachers of the city of Milwaukee. In the former case it was contended, among other things, that the statute might be sustained as a contract with no involvements concerning past services or extra compensation, because by its terms the state agreed to provide a new annuity for a new consideration,—the payment by the retired teacher of $100 into the general fund. To that contention we replied (p. 63):

"When the applicants rest their claims on their former service they are entangled with sec. 26, art. IV, Const. When they free themselves from that by relying only upon the new consideration to support a new contract they put themselves into the class of other private citizens, with former teaching status as an identifying mark only, and the special benefit

granted them is a use of public funds for a private interest and, hence, unconstitutional."

We said also in that case that even if the legislature had in its enactment of sec. 42.535, Stats., expressed its gratitude and declared that the payments of additional benefits were to be made in furtherance of a public purpose (p. 59),—

". . . we would be unable to find that such an expression cleared away the difficulties and established a gratuity to them as a public purpose justifying the expenditure of public funds. Noble and useful as the profession of teaching in the public schools and institutions of higher education may be, as much may be said for most other forms of service to the public. If such a declaration by the legislature is sufficient to support, as an expenditure for a public purpose, a bonus for former teachers and an inducement to bring successors into this field of public service, we see no way to exclude from similar benefits any individual or group of individuals who have performed public service at least as fundamental to the survival of government and as essential to public welfare as the teaching profession. If gratitude for past services and a concern for the future of former teachers will validate the constitutionality of legislation granting bonuses to them when their services have been rendered and their contracts not only entered into but on their part fully executed, so must the same considerations support and require judicial approval of whatever, for the same declared purpose, the legislature sees fit to confer on any other person who has labored in the public interest. If an alleged public purpose justifies such legislation today in behalf of one person because once he was a teacher, it must tomorrow equally justify similar legislation in behalf of another because once he served as an executive or administrative officer, a legislator, or judge."

There can, therefore, be no doubt that it has been declared as the law of this state that payment of public moneys to teachers who have retired from the service is a use of public funds for a private purpose or interest, and that any legisla-

tion which purports to authorize it is unconstitutional. It is immaterial that in the former case the money of the state was involved and that here it is the money of Milwaukee county; in such case it is public funds sought to be paid for a private purpose. Because I think that we are bound by what we said and held in the former case, I would reverse.

I am authorized to state that Mr. Justice BROWN joins in this dissent.

FAIRCHILD, C. J., also dissents.