(No. 35782.—

THE PEOPLE *ex rel.* ANNA SCHMIDT, Appellee, *vs.* WARREN C. YERGER *et al.,* Trustees, Appellants.

*Opinion filed January 20, 1961.—Rehearing denied March 27, 1961.*

HOUSE, J., dissenting.

BERNARD C. GILLMAN, and ROBERT W. BRINN, both of Rock Island, for appellants.

EAGLE & EAGLE, of Rock Island, for appellee.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This is an appeal from a judgment in a *mandamus* action directing the trustees of the Firemen's Pension Fund of the city of Rock Island to pay increased benefits to the widow of a deceased fireman.

August Schmidt served as a fireman for the city of Rock Island for over 41 years and contributed to the pension fund. He retired as chief of the department in 1944 at which time his salary was $215 per month. He received a pension until his death on November 7, 1958. At the time of Schmidt's retirement section 6 of the Firemen's Pension Fund Act (Ill. Rev. Stat. 1943, chap. 24, par. 923), provided payment of $45 per month to the widow of a deceased fireman.

Subsequently, the State legislature passed an act, approved July 13, 1953, amending section 6 to read "To the widow of any active or retired fireman while unmarried, a monthly pension equal to 40% of the amount of the monthly salary attached to the rank he held on the last day of his service in the fire department, * * *." Ill. Rev. Stat. 1953, chap. 24, par. 923.

On this appeal the trustees seek to reverse the judgment below on the ground that it was the legislative intent that all rights and benefits under the act are to be determined as of the date of retirement. Therefore, any increase in widow's benefits would be applicable only to widows of firemen in active service at or after the effective date of the act. They assert that if the act was construed otherwise, an increased pension would constitute extra compensation to a public officer for past services within the prohibition of section 19 of article IV of the constitution.

A similar constitutional question was raised in *Sommers* v. *Patton*, 399 Ill. 540, and that case is persuasive on the issues here if a widow's rights are derivative from her husband's occupation and are subject to the same constitu-

tional prohibition. The contention was made in the *Sommers* case that the words "fireman" or "firemen" are used in section 6 in such a manner as to include those who may have served in the fire department and who may have retired prior to the effective date of the amendments. This court said in that opinion, at p. 548, "We are of the opinion that the wording of these sections is not subject to that construction. A reading of the act indicates a legislative intent to benefit only those in service when the act takes effect and those who thereafter become members of the fire departments governed by the act. A 'retired fireman' could not be considered a 'fireman' under the terms of the act. If a 'retired fireman' was to re-enter the service he would then become a 'fireman.' Since these provisions apply only to present and future firemen as distinguished from retired firemen, they do not allow for additional compensation for past services as prohibited by section 19 of article IV of the constitution."

In discussing the purposes and the reasons for the establishment of pension systems, we said in *Porter* v. *Loehr*, 332 Ill. 353, at p. 359:

"The establishment and maintenance of a system of pensions is not a public duty or obligation,—it is merely a question of policy, to be determined by the law-making body. The General Assembly may well believe that by such a system the public will be benefited, first, by encouraging competent and faithful employees to remain in the service and refrain from embarking in other vocations; and second, by retiring from the public service those who by devoting their best energies for a long period of years to the performance of duties in a public office or employment, have for that reason, or because of advanced age, become incapacitated from performing the duties as well as they might be performed by others more youthful or in greater physical or mental vigor. [Citation.] These considerations, however, have no application to public officers or employees

who are not in the public service at the time a pension system is established or when increases in pensions are granted. Hence the question whether pensions granted to retired public officers or employees may be increased after their periods of service have ended is distinct and different from the question of the power to provide pensions for public officers and employees in the active service.

"Increases in pensions to retired public officers and employees often nullify appreciably the public benefits derived from general pension laws by depleting the funds rightfully applicable to the payment of the pensions of officers and employees in the active service when they ultimately retire. Hence such increases serve no real public purpose. * * *

"The amendatory acts increasing the pensions of retired policemen do not contemplate the rendition of additional services by the pensioners. They were paid when they performed their services and the amounts of their pensions were fixed by law when they retired. The increases are not granted for services to be performed by the pensioners, but have as their sole basis or justification the services which they rendered prior to their retirement. The obligations which the performance of those services imposed upon the public have been fully discharged. No obligation, either legal or moral, to pay more than the stipulated compensation arises where no additional services have been or will be rendered. Extra compensation is a payment or allowance in excess of that which was fixed by law or contract when the services were rendered. Since the increases in the pensions of retired policemen sought to be effected by the amendatory acts in question are based solely on the services rendered by them prior to their retirement, these increases necessarily constitute an extra allowance for past services. Such an allowance section 19 of article 4 of the constitution expressly forbids, * * *."

We adhere to the views expressed in the *Sommers case*

and the *Porter case,* that a retired fireman cannot constitutionally be given an increased pension by an amendatory act adopted after the date of his retirement.

Plaintiff, however, points out that in 1951, three years after the decision in the *Sommers case,* the legislature amended section 6, by adding after the word "widow," the words, "of any active or retired fireman." It is argued that this shows an intent to abrogate the rule of the *Sommers case* insofar as it applies to widows of retired firemen. Plaintiff, therefore, asserts that the only question before this court is whether a widow of a public officer may be considered to be a public officer within the meaning of section 19 of article IV of the constitution of 1870. She claims that this question was determined in her favor by *People ex rel. Douglas* v. *Barrett,* 370 Ill. 464, involving an appropriation to the widow of a deceased member of the General Assembly, and *People ex rel. McDavid* v. *Barrett,* 370 Ill. 478, concerning appropriations to the widows of three deceased circuit judges. In each instance the appropriation was equal or substantially equal to the salary of such officer from his death to the qualification of his successor. The State officials refused to issue warrants in favor of the widows, one of the grounds being the same as that asserted here. In both cases it was held that none of the recipients stood in the relation of public officers, agents, servants or contractors with the State, and writs of *mandamus* to compel payment were issued.

These opinions further stated that appropriations to widows of deceased public officers bear no relation to the purpose of the constitutional prohibition. The rationale of *People ex rel. Douglas* v. *Barrett,* 370 Ill. 464, as stated at p. 470, is: "Since members of the General Assembly are paid their entire salary soon after they take the oath of office, Douglas would have received his salary had he lived but a few days longer. The salary is an incident to title to the office and is not based alone on the amount of

services rendered. Where, as here, the only factor preventing the claim from being perfectly valid, is death a few days before taking the oath, we cannot say that the legislature was not justified in recognizing the widow's moral or equitable claim to Douglas' salary." Likewise in *People ex rel. McDavid* v. *Barrett,* 370 Ill. 478, it was recognized that a moral obligation is a sufficient basis for an appropriation of public money to an individual if the purpose be a public purpose. Both of these cases are based upon the assumption that a moral obligation existed although the facts revealed no legal claim of any kind.

The claim of the plaintiff here is not based upon any moral obligation where no legal claim can be made. Her claim is based solely on section 6 of the Firemen's Pension Fund Act and is a statutory claim. The *Barrett* cases, involving direct legislative appropriations to individuals to whom no legal obligation is owed, cannot be construed as authority to determine a widow's statutory rights under section 6 of the Firemen's Pension Fund Act. We note that both *Barrett* cases were decided in 1939, prior to the creation of the Judges Retirement System of Illinois in 1941, (Ill. Rev. Stat. 1941, chap. 37, pars. 441.1 *et seq.,*) and the General Assembly Retirement System in 1947, (Ill. Rev. Stat. 1947, chap. 63, pars. 43 *et seq.,*) both of which provided for retirement annuities, widows annuities, and other benefits upon death of a participant.

Nor do we agree that the 1951 amendment need be given the construction suggested by plaintiff. The language of section 6, prior to that amendment, when taken in conjunction with language of the *Sommers case* that a "retired fireman" could not be considered a "fireman," created some degree of vagueness. The 1951 amendment made it clear that a widow of a fireman who had been in active service on the effective date of the act was entitled to benefits if the husband died after a subsequent retirement. We need not attribute to the legislature any such broad

purpose as to grant to widows separate privileges and rights constitutionally denied to their husbands.

It is clear that the purpose of the Firemen's Pension Fund Act is to provide for additional pay for active firemen, by way of benefits withheld, in order to induce long continued service. (*Sommers* v. *Patton*, 399 Ill. 540, 549; *Porter* v. *Loehr*, 332 Ill. 353). The fact that these benefits are in part receivable only by the fireman or his widow after retirement in no way alters this purpose. The essential prerequisite of all benefits is the active service of the firemen. We, therefore, conclude that the legislature did not intend, by the 1951 amendment, to create special and different rights for widows of retired firemen that were not derivative from the rights of the firemen themselves. We do not believe the legislature intended by this act to give to widows rights denied their husbands by the constitution of Illinois.

We now turn to section 6 as amended in 1953 and, after reading said section to determine the intent of the legislature, we conclude that, in light of the purposes to be accomplished by the establishment of pension systems, the manifest intent of the legislature was that the 1953 amendment applies only to "widows of retired firemen" who retired after the effective date of the amendment. The legislature had indicated that the widow's rights are derivative by defining "firemen" as including all persons who are entitled to the benefits of the act. Furthermore, the act provides that no pension shall be allowed to the widow of a deceased fireman, or to a child of such widow, who has married such fireman subsequent to the date of his retirement.

Nothing in either the 1951 or the 1953 amendments to section 6 expresses an intention that the acts should operate retroactively. In the absence of such express provision, it is well settled that the act will be construed as prospective and not retrospective. *Friedman* v. *City of Chicago*, 374 Ill. 545, 550; 34 I.L.P. 154-155.

We conclude that the legislature intended section 6, as amended in 1951 and 1953, to operate *in futuro* in accordance with ordinary statutory construction and not retroactively to increase pensions of widows of retired firemen. If the legislature had intended the amendment to operate retroactively to increase pensions of widows of firemen who retired before the 1953 amendment, it would have expressly said so. This it did not do and in the absence of such express provision we need not consider any possible violation of section 19 of article IV of the constitution of Illinois.

Section 6, when properly construed to operate prospectively, is constitutional. The section does not increase benefits to widows of firemen who retired prior to the effective date of the act. The judgment ordering a writ of *mandamus* to issue, must therefore be reversed.

*Judgment reversed.*

Mr. JUSTICE HOUSE, dissenting:

I too am in complete accord with the views expressed in the *Sommers* and *Porter* cases that a retired fireman's pension cannot be constitutionally increased, but that is not the issue. The question here, whether the constitutional prohibition extends to widows, has been fully answered in the negative by the *Barrett* cases, (370 Ill. 464 and 370 Ill. 478,) where it was held that appropriations to the widow of a member of the General Assembly and to the widows of three circuit judges, respectively, were proper. The rationale of those cases was that the intent of the framers of the constitution in prescribing the prohibition was to remove the temptation of yielding to pressure and persuasion from public officers, thereby closing the door to corruption and fraud, but that appropriations to widows bear no relation to such prohibition.

The majority adhere, albeit somewhat vaguely, to the *Barrett* cases asserting that there the legislature recognized a moral obligation in voting the appropriations, but infer

that no similar moral design or intent can be gathered from the amendment to section 6 of the Fireman's Pension Fund Act. This reasoning is difficult, if not impossible, to follow. How can we say that the General Assembly recognized a moral obligation to widows of its members and widows of circuit judges, but saw no moral obligation to increase pensions of widows of deceased firemen? It seems more realistic to say that the legislature recognized economic factors in increasing the pensions of widows in 1947 from slightly more than 20% of their deceased husband's retiring salary to 40%, which in this case would amount to an increase from $45 per month to $86 per month. The increased cost of living has worked a real and substantial hardship upon persons having a fixed income. The legislature has recognized the problem of the rising cost of living by statutes increasing salaries, pensions, workmen's compensation payments, and many others. I think it was their intention to do likewise here.

The 1951 amendment added to the word "widow" the words "of *any* active or retired fireman." It is a strained interpretation to say that the purpose of the amendment was to confine increased benefits to widows of firemen who had been in active service on the effective date of the amendment, in the face of the plain wording which says it shall apply to the widow of "any" active or retired fireman.

The design to increase pensions of retired firemen's widows may have been obscure in the 1947 amendment, and this court so held in the *Sommers* case, but to me the 1951 amendment definitely manifests an intent that relief be extended as well to those who became widowed after the retirement of their fireman husbands.