Mary L. Callahan, et al., All Minors, by Mary L. Callahan, Their Mother and Next Friend, Plaintiffs-Appellees, v. Board of Trustees of the Fireman's Pension Fund, Bloomington, Illinois, by Frank Totterer, President, Defendant-Appellant.

Gen. No. 10,787.

Fourth District.

April 27, 1967.

Joseph A. Londrigan, of Springfield, and James R. DePew, of Bloomington, for appellant.

Loren Thomson, of Thomson, Thomson & Mirza, of Bloomington, for appellees.

TRAPP, J.

This is an appeal from a judgment of the Circuit Court of McLean County, Illinois, holding that plaintiffs are entitled to receive a widow's and dependents' pension under the Firemen's Pension Fund Act (Ill Rev Stats 1963, c 108½, § 4–114).

George L. Callahan was employed by the City of Bloomington, Illinois, as a fireman on August 15, 1957, after receiving a physical examination by a doctor, resulting in a finding that he was in excellent physical shape.

About seven years after his employment, specifically on July 22, 1964, a physical examination of Mr. Callahan

disclosed a tumor of the chest which subsequently proved to be malignant. Mr. Callahan had been found free of complaints or health defects in April, 1963.

After he became ill in 1964, Mr. Callahan went on a 90-day sick leave and upon its expiration he was, at his own request, given a leave of absence without pay pursuant to Rule XII, § 8 of the Personnel Code of the City of Bloomington, which provides as follows:

> "8. *Leave Without Pay.* The City Manager may grant a regular employee a leave without pay for a period not to exceed one year when it is in the interest of the City to do so. The employee's request shall be considered when he has shown by his record it is desirable to retain the employee even at some sacrifice. During the employee's approved leave of absence, his position may be filled by a limited term appointment, temporary promotion, or temporary reassignment of an employee. At the expiration of the leave without pay, the employee has the right to and shall be reinstated to the position he vacated if the position still exists; or, if not, to any other vacant position in the same class. Approved leaves without pay shall not constitute a break in service."

During the time that the leave without pay was in effect Mr. Callahan died, presumably of the lung cancer which had had its inception some time subsequent to April, 1963, and prior to July 22, 1964.

The issue of the right of the widow and dependents to a pension is determined chiefly by the meaning of § 4-114 of c 108½ (Ill Rev Stats, 1963), the pertinent part of which is as follows:

> "4-114. *Widow or dependent's pension.* If a fireman dies in the fire service as a result of any illness or accident which had its inception while he

13

was in such service with pay, or if a fireman dies from any cause during his retirement for disability, or during his retirement after 20 years' service, having made the contributions required in this Article, the Board shall direct the following payments from the fund:

"(a) To the widow of any active or retired fireman while unmarried, a monthly pension of 40% of the monthly salary attached to the rank he held on the last day of his service in the fire department, and to the guardian of any minor child or children, 8% of such monthly salary for each such child until attainment of age 18";

Appellant, Board of Trustees, makes the contention that the Firemen's Pension Fund Act must be read as a whole to ascertain the legislative intent, and that, when so read, it does not provide any pension for a widow or dependents in the event of death of a fireman from causes not connected with his duties, unless and until the fireman has completed ten years' active service and contribution to the pension fund.

Appellant's reasoning is that the widow and dependents have strictly derivative rights, and that death of a fireman under circumstances in which a disabling injury or sickness would have given the fireman no pension rights, cannot give pension rights to the widow and dependents.

It is asserted that prior to the 1947 amendments to the Firemen's Pension Fund Act, the only benefit for disablement by sickness or injury was one provided in case of disablement incurred in, and resulting from, the performance of duty. The 1947 amendment divided the disability cases into those "incurred in and resulting from the performance of any act or acts of duty," and those

14

resulting from "any cause other than the performance of any act or acts of duty." The latter category attached a condition of active service of ten years to entitle the fireman to a retirement pension. (Ill Rev Stats 1947, c 24, § 922.) Appellant cites Sommers v. Patton, 399 Ill 540, 78 NE2d 313, and People ex rel. Schmidt v. Yerger, 21 Ill2d 338 on 342, 172 NE2d 753, to establish that the rights of widows and dependents are derivative. The situation there involved was that the legislature had increased benefits. It was conceded that, under § 19, Art IV of the Constitution of Illinois, increased benefits could not be given to a fireman after he retired. The court found that the legislature did not intend to increase benefits to widows of firemen who had retired prior to the effective date of the amendment. The court stated in the Yerger case, p 344:

> "The legislature had indicated that the widow's rights are derivative by defining 'firemen' as including all persons who are entitled to the benefits of the act."

We are not here confronted with a question of changes in benefits with respect to a fireman who has already retired. We are concerned with the meaning of the statute as to benefits given a fireman "in service" and his dependents.

We think that the argument that the statute requires fulfillment of one of two conditions, to wit: death resulting from disablement incurred in the line of duty, or, death during an established retirement (which would require either the first condition of disablement in the line of duty, or a minimum of ten years' service) goes too far.

We find the language of the first paragraph of § 4–114 quite plain in establishing two categories, the first

15

being death "while in the fire service," and the second death "during retirement" (which latter may be either for disability or after 20-years' service).

As to the first category of death "while in the fire service," the requirement is that the death must be "as a result of any illness or accident to him which had its inception while he was in such service with pay." As to the second category, the death might be "from any cause" (that is, whatever and whenever the inception of the illness or accident causing the death).

The legislature was quite familiar with the language necessary to indicate illness or accident resulting from the performance of duty and used the language heretofore quoted, that is, "incurred in and resulting from the performance of any act or acts of duty" when it so intended. Such language is certainly not to be equated with the language "as a result of any illness or accident to him which had its inception while he was in such service with pay," which is the language found in the first paragraph of § 4-114.

Appellant's contention would require us to read into § 4-114 a requirement that the fireman either be retired for disability, or be *eligible* for retirement for disability. This language is simply not in the section. The language of this section has not been changed substantially since prior to the 1947 amendments.

■ A difficult question is whether the fireman in this case, being on leave of absence without pay, was "in the fire service." We take it that the phrase "with pay" refers to the time of inception of the illness. We do read the requirement of "active" into the matter of eligibility by reason of the first clause of subparagraph (a) of § 4-114, which is that payment shall be made: "(a) To the widow of any active or retired fireman while unmarried, etc." It appears to us that the reference "active" or "retired" is an attempt to summarize

16

the categories which we previously outlined as "in the fire service," and, "during retirement."

The Firemen's Pension Fund Act (c 108½, § 4–108 (Ill Rev Stats)), defines "creditable service," and it states that "leaves of absence for illness or accident occurring to a fireman, regardless of the length thereof, etc.," shall be counted in computing creditable service. While "creditable service" is not necessarily identical with "in the fire service," or in the *active* fire service, especially since the definition includes disability retirement where no pension was received, we think that this definition of what may be credited adds legislative recognition to the action of the municipality in granting a leave of absence. The general purpose of a leave of absence is to preserve the status of the employee. Here the leave was granted pursuant to a regular system established by the personnel code of the city, which stated that such leave should not constitute a break in service. We note that the legislative approval of a leave of absence in reference to creditable service is not unlimited, but is carefully confined to leave of "absence for illness or accident occurring to the fireman." We are of the opinion that during the period of authorized leave of absence of Mr. Callahan, which in this case was definitely due to illness or accident which had its inception while he was in the service with pay, preserved his status in the fire service.

The judgment of the Circuit Court is affirmed.

Affirmed.

CRAVEN, P. J. and SMITH, J., concur.