849 P.2d 1378

**Edward McCLEAD and Nellie A. McClead, husband and wife, Plaintiffs/Appellants,**

v.

**PIMA COUNTY and Board of Supervisors; State Retirement Plan and System and Board of Directors; Elected Officials' Retirement Plan and Fund Manager; Public Safety Personnel Retirement System and Fund Manager; Corrections Officer Retirement Plan and Fund Manager; and State of Arizona, Defendants/Appellees.**

No. 1 CA–CV 90–477.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 27, 1992.

Review Denied May 4, 1993.

John S. O'Dowd and O'Dowd, Burke & Lundquist, P.C. by Erik M. O'Dowd, Tucson, for plaintiffs, appellants.

Eaton, Lieberman & Dodge, Ltd. by Marc R. Lieberman, Phoenix, for Defendants, Appellees Public Safety Personnel Retirement System and Fund Manager, Elected Officials' Retirement Plan and Fund Manager, Corrections Officer Retirement Plan and Fund Manager.

Stephen D. Neely, Pima County Atty. by Peter E. Pearman, Deputy County Atty., Tucson, for defendants, appellees Pima County and Bd. of Sup'rs.

Grant Woods, Atty. Gen. by David Rich, Mariannina E. Preston, Fred W. Stork and Bonnie E. Elber, Asst. Attys. Gen., Phoenix, for defendants, appellees Ariz. State Retirement Plan and System and Bd. of Directors and State of Ariz.

Ridge & Issaacson, P.C. by Lewis Kowal, Phoenix, for amicus curiae State Lodge of Fraternal Order of Police.

## OPINION

McGREGOR, Judge.

This action requires us to determine whether increases in state employee retirement benefits that are authorized after the benefiting employees have retired violate the extra compensation and gift clauses of the Arizona Constitution or impair the obligations of contract of other vested members of the retirement plans. Because the challenged benefits were not paid from funds belonging to the state, we find no unconstitutional extra compensation. In addition, because the expenditures served a public purpose and did not endanger the retirement plans' financial stability, we find no violation of the gift clause and no impairment of contract.

### I.

Pima County employed Edward McClead for approximately thirteen years, during which time he contributed to the Arizona State Retirement Plan and System ("ASRPS"). Upon his retirement in 1987, McClead began receiving monthly pension benefits from ASRPS. In 1988, ASRPS offered McClead and his wife ("McCleads") a health insurance premium subsidy. McCleads declined the subsidy because they already received health care benefits from another source.

In April 1989, McCleads brought a taxpayer suit pursuant to Ariz.Rev.Stat. Ann. ("A.R.S.") §§ 35–212 and –213 [1] against ASRPS and its Board of Directors, Pima County and its Board of Supervisors ("Pima County"), the Elected Officials Retirement Plan ("EORP"), the Public Safety Personnel Retirement System ("PSPRS"), the Corrections Officer Retirement Plan ("CORP"), the Fund Manager responsible for administering state retirement plans and systems, and the State of Arizona ("State"). McCleads' original and amended complaints relied on the Arizona Constitution to challenge pension benefit increases, insurance premium subsidies, and tax equity allowances [2] for beneficiaries of the designated plans who had retired from public employment before the Arizona legislature authorized the increased benefits. McCleads claimed all three types of post-retirement benefit increases violate the "extra compensation clause" [3] and the "gift

---

1. A.R.S. §§ 35–212 and –213 empower the attorney general, or a private citizen who has made demand upon the attorney general, to bring an action in the name of the state to enjoin and recover illegal payments of public monies. A taxpayer may recover costs and reasonable attorney's fees if his suit succeeds.

2. The Arizona legislature authorized a permanent increase in base benefits known as a "tax equity benefit allowance" when it included state pension payments in retirees' state taxable income in response to *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) (state cannot levy state income tax on federal pensions if it exempts state pensions from the tax).

3. "The Legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered...." Ariz. Const. art. IV, pt. 2, § 17.

clause"[4] of the Arizona Constitution because the retired recipients provide no additional services in exchange for the increased benefits. McCleads also claimed the ASRPS post-retirement insurance premium subsidies violate the United States Constitution[5] and the Arizona Constitution[6] by creating liabilities that threaten to deplete substantially the pension fund and impair the vested rights of pensioners such as McClead.

The trial court granted appellees' motion for summary judgment. Relying on *Rochlin v. State*, 112 Ariz. 171, 540 P.2d 643 (1975), the court held that a pension is not a gratuity but compensation for services rendered and "[t]he Constitution of the State grants the Legislature the latitude to provide pension benefit increases of [this] kind ... [s]o long as the benefit increases are reasonably related to the service provided by the public employees." The court further reasoned that the legislature has "chosen to limit the erosion of the *value* of pension benefits to its retired public employees by increasing the amount [of] pension benefits from time to time." Finally, the court concluded the challenged benefits could not be construed as an impairment of the obligation of contract. Appellees moved for an award of attorney's fees and, although the court opined that fees could be assessed against McCleads, it ordered each party to bear its own costs.

McCleads timely appealed the court's grant of appellees' motion for summary judgment. They renew their constitutional challenges to all post-retirement benefit increases. Appellees contest McCleads' substantive claims and challenge their standing to raise the extra compensation and gift clause arguments.

■ To overcome the presumption in favor of the constitutionality of a legislative enactment, McCleads must carry the burden of establishing the legislation in question is unconstitutional beyond a reasonable doubt, with any doubts to be resolved in favor of constitutionality. *Rochlin*, 112 Ariz. at 174, 540 P.2d at 646; *New Times, Inc. v. Arizona Bd. of Regents*, 110 Ariz. 367, 519 P.2d 169 (1974).

## II.

■ The first issue is whether A.R.S. §§ 35–212 and –213 confer standing upon McCleads as taxpayers to challenge the increased benefits as violating the extra compensation and gift clauses of the Arizona Constitution. Prior to July 27, 1983, sections 35–212 and –213 empowered taxpayers to "bring an action in the name of the state to enjoin the illegal payment of state money." In interpreting these statutes, the Arizona Supreme Court defined "state money" as "money in the state treasury credited to a particular fund therein." *Grant v. Bd. of Regents*, 133 Ariz. 527, 529, 652 P.2d 1374, 1376 (1982). McCleads do not contend the funds challenged in this action are money in the state treasury credited to a particular fund.

By amendment effective July 27, 1983, however, the Arizona legislature amended A.R.S. § 35–212.A to grant taxpayers standing to challenge the expenditure of "public" rather than "state" money. Section 35–212.B broadly defines "public monies" as "all monies coming into the lawful possession, custody or control of state agencies, boards, commissions or departments or a state officer, employee or agent in his official capacity, irrespective of the source from which, or the manner in which, the monies are received." The state pension fund manager is a state agency and the funds it controls constitute public money within the meaning of section 35–212. *See Fund Manager v. Superior Ct.*, 152 Ariz. 255, 259–60, 731 P.2d 620, 624–25 (App.1986) (citing *Fund Manager v. Arizona Dep't of Admin.*, 151 Ariz. 93, 725

---

4. "[T]he state shall [n]ever ... make any donation or grant ... to any individual...." Ariz. Const. art. IX, § 7.

5. "No State shall ... pass any ... Law impairing the Obligation of Contracts...." U.S. Const. art I, § 10.

6. "No ... law impairing the obligation of a contract, shall ever be enacted." Ariz. Const. art. II, § 25.

P.2d 1127 (App.1986)). The current versions of A.R.S. §§ 35–212 and –213, therefore, give McCleads taxpayer standing to challenge post-retirement benefit increases paid from these funds.[7]

### III.

Because McCleads' challenges depend upon the structure and funding of the public retirement plans and upon the post-retirement benefits involved in this suit, we next examine the nature of the plans and challenged benefit increases.

ASRPS is a comprehensive plan and system regulated by the Employment Retirement System Act and Plan, A.R.S. §§ 38–741 to –781.38, for the benefit of employees and officers of the state, state instrumentalities, and state political subdivisions. Employee and employer contributions, as well as interest earned on those contributions, fund the plan. *See* A.R.S. §§ 38–748, –749, –781.04, –781.05. Through the statutory scheme establishing and defining the plan, the legislature separated the plan funds from the general revenues of the state. ASRPS monies are kept in a "system depository separate and apart from all public monies or funds of this state, which shall be administered by the system exclusively for the purposes of this article." A.R.S. §§ 38–753.A, –781.21. In addition, ASRPS monies must be used solely for the benefit of plan and system members. *See* A.R.S. § 38–781.05.B.

McCleads challenge various statutes, enacted between 1970 and 1989, that provided ASRPS participants post-retirement benefit increases.[8] In all but two of these instances, the legislature directed that increased payments be made from the assets of the plan with any costs added to the plan's unfunded liability. In one exception, the legislature authorized adding the cost of a permanent increase in retirement pay to employer costs under the plan pursuant to A.R.S. § 38–781.05. Laws 1987, ch. 281, §§ 1–2. In another apparent exception, A.R.S. § 38–781.28.C, the legislature authorized funding by a yearly appropriation from the state general fund through June 30, 1983. A.R.S. § 38–781.35.

The second plan involved, PSPRS, is the state agency responsible for administering the pensions of Arizona's police and fire fighters. A.R.S. §§ 38–841 to –858. PSPRS has never received any appropriations from the Arizona treasury. Instead, PSPRS is funded entirely by contributions from its members, their state, county, or city employers, and investment earnings. *See* A.R.S. § 38–843. The evidence of record indicates that PSPRS is fully funded with more than sufficient monies available to pay the pensions of all participating members and their dependents.

McCleads challenge PSPRS post-retirement benefit increases enacted between 1976 and 1989.[9] These benefit increases were funded from either the PSPRS fund, employer contributions, or excess investment earnings.[10]

EORP, the third plan involved, administers the pensions of Arizona's elected officials and judges. A.R.S. §§ 38–801 to –818. EORP receives no funds from the Arizona treasury; it is funded entirely by the contributions of its members, their em-

---

7. Appellees argue that in any event McCleads lack standing to challenge benefit increases paid prior to the statutory amendment because amended A.R.S. § 35–212 does not apply retroactively to govern events that occurred before its effective date. *See State v. Superior Ct.,* 139 Ariz. 422, 427, 678 P.2d 1386, 1391 (1984) (statute given retroactive effect only if clear legislative intent to do so). Given our resolution of the issues raised, we do not reach this question.

8. Laws 1970, ch. 134, § 2; Laws 1972, ch. 51, § 26; Laws 1973, ch. 113, § 2; Laws 1976, ch. 99, §§ 1–3; Laws 1978, ch. 53, §§ 1–3; Laws 1980, ch. 180, §§ 1–2; Laws 1981, ch. 310, §§ 1–

3; Laws 1984, ch. 397, §§ 1–2; Laws 1985, ch. 270, §§ 1–2; Laws 1986, ch. 287, §§ 1–2; Laws 1987, ch. 281, §§ 1–2; Laws 1988, ch. 277, § 3, and ch. 307, § 1; Laws 1989, ch. 310, §§ 4, 17–19.

9. Laws 1976, ch. 161, §§ 13–15; Laws 1977, ch. 85, §§ 1–2; Laws 1979, ch. 220, §§ 2–4; Laws 1981, ch. 311, §§ 1–3; Laws 1986, ch. 284, § 1; Laws 1988, ch. 331, §§ 1–3; Laws 1989, ch. 310, §§ 10–11, 19(C).

10. Excess investment earnings are those funds earned in excess of the amount necessary to fund members' pensions.

ployers, court fees, and investment earnings. *See* A.R.S. § 38–810. According to the record before us, as of 1989, EORP was more than 92 percent funded. The record also indicates plan contributions and investment returns are funding the obligations of EORP as incurred and offers no evidence EORP will be unable to meet its pension obligations.

McCleads challenge EORP post-retirement benefit increases enacted between 1984 and 1989.[11] These benefit increases were funded from current assets of the fund, net investment earnings, or employer contributions.

The last plan challenged, CORP, administers the pensions of Arizona's corrections personnel. A.R.S. §§ 38–881 to –907. CORP also is funded entirely by member and employer contributions and investment earnings. *See* A.R.S. §§ 38–881, –883.A.4. Evidence of record indicates that, as of 1989, CORP was 90 percent funded and that contributions and investment earnings were funding the obligations of the plan as incurred. The record offers no evidence that CORP will be unable to meet its pension obligations.

As to CORP, McCleads challenge benefit increases enacted in 1988 and 1989.[12] These increases were funded by assets of CORP and excess investment earnings.

## IV.

### A.

McCleads first argue that post-retirement benefit increases violate the extra compensation clause of the Arizona Constitution because they grant extra compensation after services have been rendered. Ariz. Const. art. IV, pt. 2, § 17.

11. Laws 1984, ch. 137, §§ 1–2, and ch. 360, §§ 1–2; Laws 1985, ch. 271, §§ 1–2, and ch. 33, §§ 1–2; Laws 1986, ch. 271, §§ 1–2; Laws 1987, ch. 111, §§ 1–2; Laws 1988, ch. 253, §§ 2–3; Laws 1989, ch. 310, § 19(B).

12. Laws 1988, ch. 248, §§ 1–2; Laws 1989, ch. 310, § 19(D).

13. Ill. Const. art. IV, § 19: "[T]he General Assembly shall never grant or authorize extra

In response, appellees assert that, in *Rochlin v. State*, 112 Ariz. at 177–78, 540 P.2d at 649–50, the Arizona Supreme Court held increased pension benefits do not violate the extra compensation clause of the Arizona Constitution. In *Rochlin*, appellants challenged the liberalization of benefits and the reduction in the years of service required to qualify for benefits under PSRPS as violating the extra compensation clause. The court noted it had earlier held that "a pension is not a gratuity but deferred compensation for services rendered" and that "[t]he nature of a pension under Arizona statutes does not provide extra compensation for services already rendered." *Id.* at 177, 540 P.2d at 649 (citing *Yeazell v. Copins*, 98 Ariz. 109, 402 P.2d 541 (1965)). The court then concluded that "[a] pension even though based on past service is not intended to be compensation for past services." *Rochlin*, 112 Ariz. at 178, 540 P.2d at 650. The retirement plan amendments challenged in *Rochlin*, however, affected the benefits and service requirements only of public employees still in public service. Unlike the situation involved in this case, post-retirement benefit increases were not at issue. For that reason, while *Rochlin* helps define the relationship between Arizona's extra compensation clause and pension benefits, it is not dispositive of the issues before us.

McCleads urge us to follow authority from other jurisdictions in which state courts, construing constitutional provisions similar to Arizona's extra compensation clause, have invalidated post-retirement benefit increases. *See, e.g., Porter v. Loehr*, 163 N.E. 689 (Ill.1928) (amendments authorizing raising tax money to increase benefits to retired police officers violated constitutional extra compensation clause and was an appropriation of public money for a private purpose);[13] *State ex rel.*

compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract made." (Replaced by art. VIII, § 1, Ill. Const. of 1970: "(a) Public funds, property or credit shall be used only for public purposes.") *See also People ex rel. Schmidt v. Yerger*, 21 Ill.2d 338, 172 N.E.2d 753 (1961).

*Cleaveland v. Bond,* 518 S.W.2d 649 (Mo. 1975) (increased benefits to retired judges unconstitutional either as a grant of extra compensation or as a use of public money for private purposes); [14] *State ex rel. Haberlan v. Love,* 131 N.W. 196 (Neb.1911) (constitutional prohibition against granting firemen post-retirement extra compensation); [15] *Koehnlein v. Retirement Sys. for Employees of Allegheny County,* 373 Pa. 535, 97 A.2d 88 (1953) (contract fixed compensation in terms of dollars, not purchasing power, so extra compensation was unconstitutional); [16] *Sonnabend v. City of Spokane,* 53 Wash.2d 362, 333 P.2d 918 (1958) (constitution prior to amendment prohibited raising pensions of retired police officers); [17] *State ex rel. Thomson v. Giessel,* 53 N.W.2d 726 (Wis.1952) (constitutional limitation applies to retirement systems, and extra compensation to retired teacher not merely a restoration of value already granted).[18]

Courts in the above cited cases reasoned that pension payments to a state employee are constitutionally permissible deferred compensation earned through service to the state. The retired employee, however, is entitled only to the amount of compensation, usually stated in dollar terms, specified in the pension agreement in effect at the time of retirement. Any compensation exceeding this contractual amount for which the beneficiary provides no additional services or other consideration constitutes extra compensation and is therefore constitutionally prohibited.

■ Appellees contend the decisions upon which McCleads rely are not persuasive because the extra compensation clause applies to post-retirement benefit increases only if the monies used to fund the benefits are monies belonging to the state and paid into the state treasury. We agree.

14. Mo. Const. art. III, § 39(3): "The general assembly shall not have power ... [t]o grant or to authorize any county or municipal authority to grant any extra compensation, fee or allowance to a public officer, agent, servant or contractor after service has been rendered or a contract has been entered into and performed in whole or in part."

"The general assembly shall have no power to grant public money or property ... to any private person...." Art. III, § 38(a). *See also Police Retirement Sys. v. Kansas City,* 529 S.W.2d 388 (Mo.1975).

15. Neb. Const. art. III, § 19: "The legislature shall never grant any extra compensation to any public officer, agent, or servant after the services have been rendered...." (Amended 1978: "[R]etirement benefits of retired public officers and employees may be adjusted to reflect changes in the cost of living and wage levels that have occurred subsequent to the date of retirement.... Nothing in this section shall prevent local governing bodies from reviewing and adjusting vested pension benefits periodically as prescribed by ordinance.") *See also Retired City Civilian Employees Club of Omaha v. Omaha Employees' Retirement Sys.,* 199 Neb. 507, 260 N.W.2d 472 (1977); *Gossman v. State Employees Retirement Sys.,* 177 Neb. 326, 129 N.W.2d 97 (1964); *Wilson v. Marsh,* 162 Neb. 237, 75 N.W.2d 723 (1956).

16. Pa. Const. art. III, § 11: "No bill shall be passed giving any extra compensation to any public officer, servant, [or] employee ... after services shall have been rendered or contract made...." (Amended 1955: "[N]othing in this Constitution shall be construed to prohibit the General Assembly from authorizing the increase of retirement allowances or pensions of members of a retirement or pension system now in effect or hereafter legally constituted by the Commonwealth, its political subdivisions, agencies or instrumentalities, after the termination of the services of said member." Renumbered in 1967 as art. III, § 26.) *See also Jameson v. City of Pittsburgh,* 381 Pa. 366, 113 A.2d 454 (1955).

17. Wa. Const. art. II, § 25: "The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered, or the contract entered into...." (Amended 1957: "Nothing in this section shall be deemed to prevent increases in pensions after such pensions shall have been granted.")

18. Wis. Const. art. IV, § 26: "The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into...." (Amended 1956, 1973: "This section shall not apply to increased benefits for persons who have been or shall be granted benefits of any kind under a retirement system when such increased benefits are provided by a legislative act passed on a call of ayes and noes by a three-fourths vote of all the members elected to both houses of the legislature, which act shall provide for sufficient state funds to cover the costs of the increased benefits.") *See also State ex rel. Holmes v. Krueger,* 271 Wis. 129, 72 N.W.2d 734 (1955).

The language of Arizona's extra compensation clause does not expressly define the funds to which it applies. The history of the clause sheds little light on its intended interpretation because the members of the Arizona Constitutional Convention voted to adopt the clause without comment. *Records of the Arizona Constitutional Convention of 1910*, 596–97, 606, 800 (John S. Goff, ed.). Reason and the purpose of the clause, however, indicate that it applies only to legislative expenditure of state funds.

■ The purpose of the extra compensation clause is to provide certain, ascertainable compensation, free from legislative caprice, for public servants who are paid from the state treasury. *Crawford v. Hunt*, 41 Ariz. 229, 17 P.2d 802 (1932). *See also* A.R.S. § 35–141 (salaries of state officers shall be paid from state's general fund); *County of Greenlee v. Laine*, 20 Ariz. 296, 303, 180 P. 151, 154 (1919) ("unless the power to change salaries of public officers during their term was taken from the legislature, much of the valuable time of that body would be consumed in either trying to appease the appetite of importunate constituents for increase of compensation, or to gratify the spleen or grudge of others...."). A concomitant purpose is to conserve state funds by assuring the bidding process for public works operates efficiently. *Gubler v. Utah State Teachers' Retirement Bd.*, 113 Utah 188, 192 P.2d 580, 588 (1948) (Wolfe, J., concurring) (prohibition of extra compensation intended to "prevent the acceptance of a low bid from a favored contractor and a subsequent increase of his emoluments by additional later payments").

■ Reference in the extra compensation clause to a "grant" of money by the state must necessarily refer to an appropriation, since the legislature can pay money from the state treasury only by appropriation. *Cockrill v. Jordan*, 72 Ariz. 318, 235 P.2d 1009 (1951). Appropriations, in turn, can be made only from state funds, which are those funds raised by the operation of some general law and therefore belonging to the state. *Navajo Tribe v. Arizona*

*Dep't of Admin.*, 111 Ariz. 279, 280–81, 528 P.2d 623, 624–25 (1975). Crucial to application of the extra compensation clause, then, is whether the payment authorized by the legislature is payable out of the public treasury from monies belonging to the state.

While most of the decisions relied upon by McCleads are consistent with our conclusion that the extra compensation clause applies only to funds owned by the state and payable out of the public treasury, some fail to make that crucial determination. A number of courts have adopted and repeated the holding in *Porter v. Loehr*, an early case and the foundation of most subsequent opinions on the subject, without analysis of or reference to the factual context out of which the case arose. In *Porter*, the Illinois Supreme Court found that increased benefits to retired police officers from police pension and benefit funds violated the Illinois State Constitution. *Porter*, 163 N.E. at 691. The acts regulating the funds in question authorized cities to levy a property tax in an amount sufficient, when combined with other sources, to pay police pensions and provide revenue for an annuity and benefit fund. Act of June 29, 1915, § 9 (Cahill's Stat. 1925, p. 461; Smith's Stat.1925, p. 485); Act of June 29, 1921, § 11 (Cahill's Stat. 1925, p. 466; Smith's Stat.1925, p. 497). The monies used to fund the increased benefits therefore derived from a general tax.

Decisions from Wisconsin, some of which McCleads cite, provide clear examples of the relationship between the extra compensation clause and increased pension benefits. In *State ex rel. Thomson v. Giessel*, the Wisconsin Supreme Court held unconstitutional additional benefits paid to retired teachers. The state paid into the Retirement Deposit Fund by using drafts drawn upon the State Contingent Fund. As the court explained, "The state gets the money to make payments to the Contingent Fund from the General Fund, into which all income tax collections go...." *Giessel*, 53 N.W.2d at 731. The court observed that "it has not been asserted that the General Fund is not a public fund.... If the time comes when the legislature awards extra

compensation payable out of funds which are not public we may have to construe the Article with that in mind, but that question is not presented here." *Id.*

The time for Wisconsin to consider the effect of using funds that did not come from the state treasury came in *State ex rel. Holmes v. Krueger,* 271 Wis. 129, 72 N.W.2d 734 (1955). The court then held that increased retirement benefits the legislature granted retired teachers did not violate the extra compensation clause because teachers were not officers paid out of the state treasury. Some years later, in *State ex rel. Singer v. Boos,* 44 Wis.2d 374, 171 N.W.2d 307 (1969), the Wisconsin court examined an act removing a deduction from the allowance of employees already retired and so increasing their benefits. The money necessary to cover the cost of the reduction was to be appropriated from the Milwaukee County general fund. The court again held that the constitutional prohibition against extra compensation applied only to payments from the state general fund and therefore did not apply to the payments made entirely from county funds. *Boos,* 171 N.W.2d at 311.

Most of the remaining cases on which McCleads rely do not reject the distinction drawn in *Krueger* and *Boos.* Rather, most of those decisions fall into one of two categories: those decisions in which the court found unconstitutional increased retirement benefits appropriated from the general revenues of the state, and those decisions in which the court failed to consider the nature and origins of the subject monies. *People ex rel. Schmidt v. Yerger,* 21 Ill.2d 338, 172 N.E.2d 753 (1961) (no indication of source of funds); *Gossman v. State Employees Retirement Sys.,* 177 Neb. 326, 129 N.W.2d 97 (1964) (pursuant to Neb. Rev.Stat. § 84–1309, State Employees' Retirement Fund "to consist of such funds as the Legislature shall from time to time appropriate"); *Wilson v. Marsh,* 162 Neb. 237, 75 N.W.2d 723, 729 (1956) (legislature appropriated monies to originate and supplement judges' retirement fund, otherwise financed by court fees, income deductions, and state funds); *Haberlan,* 131 N.W. at 197 (additional pension payments to firemen paid from public treasury); *Koehnlein,* 97 A.2d at 88 (no indication of source of funds).

■ We believe the better-reasoned conclusion, and the conclusion that best accords with the purpose and language of the Arizona Constitution, is that a constitutional prohibition against extra compensation is intended to limit only payments of public funds from a state's treasury. We hold, therefore, that the extra compensation clause does not apply to any expenditures challenged by McCleads unless they involve public state funds paid from the state treasury in monies owned by the state.

### B.

■ To make the crucial determination whether the monies used to pay the challenged increased pension benefits are public state funds, we examine the means by which the plans challenged by McCleads are funded.

ASPRS asserts that all statutory amendments increasing pension benefits but one were paid from current assets of the retirement plan and the cost added to unfunded liability. The one exception, ASPRS states, added the cost of the benefit increase to the employer cost of the retirement plan. McCleads do not dispute those facts and fail to define any instance in which ASPRS benefit increases were paid from general funds of the state.

■ This court notes one possible exception. In 1973, the legislature authorized an annual appropriation from state funds, pursuant to A.R.S. § 38–781.35, to fund a post-retirement benefit increase enacted in A.R.S. § 38–781.28.C. This legislation appears to authorize impermissible extra compensation because the legislature funded the increase by authorizing payment of state funds. The record before us, however, does not indicate whether the legislature actually appropriated any funds or made any payments pursuant to section 38–781.35. By its terms, the statute authorized appropriations only through June

1983, and the legislature repealed section 38–781.35 in 1991. Laws 1991, ch. 170, § 7.

Under some circumstances, we would remand to the trial court to consider the unanswered questions arising from section 38–781.35. In this instance, however, such action would be pointless. At oral argument, McCleads conceded they do not seek recoupment of any improper payments from plan or system beneficiaries and they do not allege the ASPRS board is liable to repay monies received. Rather, McCleads seek prospective relief only. Therefore, because the legislature has repealed A.R.S. § 38–781.35 and because past payments funded pursuant to this statute will not affect McCleads' prospective relief, we do not further consider the statute in the context of the extra compensation clause.

The record also indicates that all post-retirement benefit increases paid by PSPRS, EORP, and CORP were paid from plan funds, additional employer contributions, or investment earnings. No increase was funded by money from the state general fund.

We therefore conclude that, with the possible exception of the appropriation referred to in now-repealed A.R.S. § 38–781.35, none of the benefit increases involved payment of extra compensation from public funds as contemplated by art. IV, pt. 2, § 17.

## V.

McCleads also contend that the post-retirement pension benefit increases, tax equity allowances, and insurance premium subsidies violate the anti-gift clause of the Arizona Constitution. Ariz. Const. art. IX, § 7. Again relying upon decisions from other jurisdictions, McCleads assert that pensions and related benefits paid to state or municipal employees are constitutionally valid only if

> conferred upon persons *who at the time* of receiving the right to them are officers or employees of the municipality. They cannot be conferred upon persons who had, previously to the grant, retired from the service of the city. A pension to such persons is an appropriation of public funds for the benefit of individuals and a gift or gratuity.

*Porter v. Loehr,* 163 N.E. at 691 (quoting DILLON ON MUNICIPAL CORPORATIONS § 430 (5th ed.)); *Marsh,* 75 N.W.2d at 732 ("If the services are rendered and terminated before the grant is made the benefits awarded are not compensation but are a gratuity.").

The Arizona Supreme Court, however, has held to the contrary. In *Yeazell v. Copins,* although it did not confront the issue of post-retirement benefit increases, the court explicitly stated that retirement benefits are not a gratuity but deferred compensation for services rendered. *Yeazell,* 98 Ariz. at 112–13, 402 P.2d at 543–44.

Further, increasing pension benefits does not conflict with the purpose of the anti-gift provision. That clause is intended to prevent government from depleting the public treasury by disbursing public funds for the private or personal benefit of private individuals, corporations, or associations. *Wistuber v. Paradise Valley Unified School Dist.,* 141 Ariz. 346, 348–49, 687 P.2d 354, 356–57 (1984); *City of Phoenix v. Michael,* 61 Ariz. 238, 241, 148 P.2d 353, 354 (1944). A government expenditure satisfies the anti-gift provision if made for a public purpose, which is a flexible concept. *Wistuber,* 141 Ariz. at 348, 687 P.2d at 356; *Industrial Dev. Auth. of County of Pinal v. Nelson,* 109 Ariz. 368, 373, 509 P.2d 705, 710 (1973).

Appellees contend that post-retirement benefit increases serve a four-fold public purpose. The increases protect the economic security of retired public servants and prevent them from becoming public charges; satisfy the state's moral obligation to remedy the effect of inflation and preserve the original value of the retirement benefits; serve as a recruiting inducement for prospective employees; and motivate current civil servants to remain in the employ of the state.

In reviewing the public purpose of these provisions, we give appropriate deference to the legislature, which presumably enacted the benefits increases for a

public purpose. *Wistuber,* 141 Ariz. at 349, 687 P.2d at 357. In our view, each of the challenged expenditures augments the deferred compensation of public employees to provide adequately for their retirement. Therefore, we conclude the post-retirement pension increases, tax equity allowances, and insurance premium subsidies serve a public purpose and satisfy the constitutional requirements of the anti-gift clause.[19]

### VI.

Finally, McCleads argue that payment by ASRPS of insurance premium subsidies to pensioners who were already retired when the legislature approved the payments constitutes an impairment of contract in violation of the United States Constitution art. I, § 10, and the Arizona Constitution art. II, § 25. According to McCleads, these newly created fund liabilities are not offset by compensating contributions and threaten to deplete monies in which McCleads have a vested interest.

Basic contract principles govern public employees' pension rights. *See Yeazell,* 98 Ariz. at 112–14, 402 P.2d at 544–46. The contract clauses of the federal and Arizona Constitutions are designed to assure that a law will not deprive a party of the benefit of its contract. *See Tower Plaza Investments, Ltd. v. DeWitt,* 109 Ariz. 248, 252, 508 P.2d 324, 328 (1973).

In *Fund Manager v. City of Phoenix Police Dep't Pub. Safety Personnel Retirement Sys. Bd.,* 151 Ariz. 487, 728 P.2d 1237 (App.1986), this court examined the circumstances under which the state may modify the contractual relationship between an employee and a public employer. The court adopted an impairment of contracts analysis test enunciated by the United States Supreme Court. That test consists of three separate questions:

1. Has the state law operated as a substantial impairment of a contractual relationship?

2. If so, is there a significant and legitimate public purpose behind the legislation?

3. If a legitimate public purpose has been identified, is the adjustment of the rights and responsibilities of the contracting parties based upon reasonable conditions and of a character appropriate to the public purpose justifying the adoption of the legislation?

*Id.* at 491, 728 P.2d at 1241 (quoting *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–12, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983)).

Applying the test in *Fund Manager* to the facts in the instant case, we conclude that McCleads have offered no evidence that ASRPS post-retirement insurance premium subsidies have created "a substantial impairment of a contractual relationship." In fact, the record reveals the plan is currently overfunded and fully able to pay all the increases in question without jeopardizing the rights of vested beneficiaries such as McCleads. McCleads' assertion that the additional payments may imperil their own contract rights is mere speculation.

### VII.

For the foregoing reasons, we affirm the trial court's judgment in favor of appellees, including the trial court's order that each party bear its own costs.

GERBER, P.J., and TAYLOR, J., concur.

---

19. Appellees also urge this court to adopt the reasoning of California's courts, which have held that once pension rights vest a beneficiary attains "pensionable status" that permits future benefits increases without violating the extra compensation or anti-gift clauses. *See, e.g., Sweesy v. Los Angeles County,* 17 Cal.2d 356, 110 P.2d 37 (1941). Because we find no constitutional violation, we do not address appellees' alternative argument.